## Case No. 1,397.

### In re BIGELOW et al.

[3 Ben. 146; [1] 2 N. B. R. 371, (Quarto, 121;) 2 Am. Law T. Rep. Bankr. 41.]

District Court, S. D. New York. Jan. 29, 1869.

BANKRUPTCY— JOINT AND SEVERAL DEBT — PARTNERSHIP ASSETS AND INDIVIDUAL ASSETS—COUNSEL FEES FOR DRAWING SCHEDULES.

1. Where members of a firm had been adjudged bankrupt, and a creditor proved a claim against them separately and not against the firm, the foundation of the claim being a bond made by the bankrupts, "composing the firm of E. & D. Bigelow & Co.," in which they bound themselves, "jointly and severally," the assets of the partnership not being sufficient to pay the partnership debts, but the assets of one of the partners being sufficient to pay all his separate debts in full: *Held,* that the creditor was entitled to dividends upon his debt out of the several assets of the individual bankrupts.

[Cited in Re Howard, Case No. 6,750; Re Bradley, Id. 1,772; Emery v. Canal Nat. Bank, Id. 4,446; Re Long, Id. 8,476; Re Tesson, Id. 13,844; Re Vetterlein, 20 Fed. 110.]

2. Counsel fees for attending on behalf of a bankrupt and opposing proceedings in involuntary bankruptcy, and for drawing inventories and schedules required to be made and filed under the order of adjudication of bankruptcy, are not proper charges against the estate in the hands of the assignee.

[Cited in Re Jaycox, Case No. 7,239; Re Gies, Id. 5,407.]

[In bankruptcy. In the matter of Edward Bigelow, David Bigelow, and Nathan Kellogg, doing business as the firm E. & D. Bigelow & Co. Heard on application by John Bigelow to prove a certain claim and the register's report thereon. Proof allowed. Heard also on claim of bankrupt's counsel. Disallowed.]

The firm of E. & D. Bigelow & Co., composed of the bankrupts above named, and its individual members, were adjudged bankrupts, in involuntary proceedings. Debts were proven to the following amounts:

| | |
|---|---:|
| Against the firm | $209,748 24 |
| Against Edward Bigelow individually | 55,395 67 |
| Against David Bigelow individually | 13,961 83 |
| Against Nathan Kellogg individually | 45,715 78 |

The assets were as follows:

| | |
|---|---:|
| Assets of the firm | $22,787 07 |
| Assets of Edward Bigelow | 14,131 03 |
| Assets of David Bigelow | 32,346 75 |
| Assets of Nathan Kellogg | 22,709 93 |

John Bigelow filed proof of a claim against the several bankrupts for $5,495.64, founded upon a bond executed by "Edward Bigelow, David Bigelow, and Nathan Kellogg, and composing the firm of E. & D. Bigelow & Co.," by which the obligors bound themselves "jointly and severally," and their "heirs, executors, and administrators, and each of them."

Other creditors objected to this claim, as against the separate estates of the bankrupts, alleging that the debt was originally a partnership debt, and should receive dividends only out of partnership assets. Thereupon, the court referred it to the register, [Theodore B. Gates,] to take proofs and report them to the court, with his opinion.

[2] [Asa Bigelow died intestate about 1850, leaving children and heirs at law, Edward Bigelow, David Bigelow, John Bigelow, Susan E. Kellogg, and Adaline B. Beers. Asa Bigelow left an estate valued at seventy-five thousand dollars, about twenty-five or thirty thousand dollars of which was in notes of the firm of E. & D. Bigelow & Co., composed of these bankrupts.

[On the 1st day of February, 1851, Asa

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [From 2 N. B. R. 371, (Quarto, 121.)]

Bigelow's heirs agreed upon a division of their father's estate, and in carrying out that agreement, the bond above mentioned was executed and delivered to John Bigelow, and he, at the same time, executed an agreement to the other heirs, wherein, in consideration of a bill of sale of certain articles of personal property, made to him by his co-heirs, and in further consideration of the bond above mentioned, which is described as having been executed by Edward Bigelow, David Bigelow, and Nathan Kellogg, composing the firm of E. & D. Bigelow & Co., he releases his interest in the residue of the personal estate, and agrees to execute releases of his interest in the real estate, when the bond shall have been paid. He subsequently gave these releases without requiring the condition to be first performed. Nathan Kellogg had no personal interest in the estate of Asa Bigelow, and derived no benefit from this division, nor was he a party to any of these transactions, excepting only the bond. John Bigelow was owing his father's estate an amount, which, added to the sum provided for in the bond, made about one-fifth of the entire estate.

[The evidence introduced both by the solicitors for John Bigelow and for the opposing creditors, was mainly directed to the object of showing what was the consideration for the execution of this bond; the solicitor for Bigelow claiming, that it was the execution of the agreement by his client to release his interest in the real estate, so far as Edward and David were concerned, and that, as to Kellogg, it was a matter of private arrangement among themselves, and cannot affect John Bigelow. The solicitor for the opposing creditor argues, that this bond was given for and on account of the firm's indebtedness to the estate of Asa Bigelow, and that it was delivered to John Bigelow as a part of the personal estate of his father, and in extinguishment of an equal amount of the notes of the firm of E. & D. Bigelow & Co., held by that estate. I think the evidence sustains the position of the solicitors for the opposing creditors. John elected to take his share out of the personal estate, and as a necessary consequence, agreed to release his interest in the real estate. A large part of the personal estate was in notes of the firm of E. & D. Bigelow & Co. Two members of the firm were equal co-heirs with John Bigelow, the other members had no interest in the estate. With him it was only a question whether the firm should continue to owe the estate to Asa Bigelow, or merge a part of that indebtedness in a bond to one of the heirs. The bond was given, and for a sum which, added to the advancements made to John Bigelow, discharged his claim upon the estate. The provision in the agreement making the release depend upon the payment of the bond, was in the nature of a security, and did not enter into the question of consideration.

[If it were allowable to adopt the theory on which the examination was conducted, I should have no difficulty in arriving at what would seem to be the inevitable conclusion, that as this was originally a partnership debt, it can only be paid out of partnership assets, but I doubt the power of the court to remit a creditor under these circumstances, to his original and extinguished remedy. The bond presented by the claimant in this case is, by express terms, joint and several, and the obligee could have maintained an action for its breach against all or either of the obligors.

[Does the fact that the obligors have gone into bankruptcy change or restrict the rights of the creditor? Section 36 of the bankrupt law [March 2, 1867; 14 Stat. 534] provides, that where partners are adjudged bankrupt "all the joint stock and property of the co-partnership, and also, all the separate estate of each of the partners, shall be taken," &c., and "all the creditors of the company, and the separate creditors of each partner, shall be allowed to prove their respective debts, * * * the net proceeds of the joint stock shall be appropriated to pay the debt of the co-partnership, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors." Any balance of the separate estate of any partner is to be added to the joint stock for the payment of partnership debts, and any surplus of joint stock is to be divided and appropriated among the separate estates "as it would have been if the partnership had been dissolved without any bankruptcy; and the sum so appropriated to the separate estate of each partner, shall be applied to the payment of the separate debts."

[The instrument under which John Bigelow claims dividends, is joint as to the co-partnership, and several as to each of the individual members; and as they have chosen to make themselves thus liable, I do not see how this court can interfere to diminish the security they have placed in the hands of their creditors. Even if the English doctrine of election obtained in this country, the court could only require the creditor to do what he has already done; he has elected to look to the assets of the individual members of the late firm, and has not proved his claim against them as co-partners.

[Our American authorities incline to treat creditors of the bankrupts according to their strict legal right, and to enforce the principles that would obtain at law. The decision of the case of Mead v. National Bank of Fayetteville, [Case No. 9,366,] by Judge Hall, in the northern district, is the latest authority on this question of the rights of creditors in bankruptcy proceedings. Edwin S. Russell, Porter Tremain, and Augustus Tremain, were adjudged bankrupts. They had been co-partners in business, and were indebted to the Bank of Fayetteville in the sum of forty-three thousand dollars, which was evidenced

by sundry notes of the firm as maker, and each of these notes bore the endorsement of one of the co-partners. Prior to the bankruptcy, the form of the paper which evidenced such indebtedness was changed upon the application of the officers of the bank, and the firm notes were taken for fourteen thousand dollars, on the notes of Porter Tremain for ten thousand dollars, on those of Augustus Tremain for nine thousand dollars, and those of Edwin S. Russell for ten thousand dollars. The notes made by the firm were endorsed by Edwin S. Russell, and those made by one of the individual partners were respectively endorsed by the other two members of the firm. The notes were given for debts which were the proper debts of the partnership.

[The assignee filed his bill, insisting that the whole debt of the bank being in equity, and in fact the debt of the firm, must be .proved as a debt against, and take a dividend from, only the joint estate of the bankrupts; and that no part of it could be paid out of the individual estate of the bankrupts, in consequence ·of their individual liability either as makers or endorsers.

[The counsel who argued the case had been unable to find any decision under the act of [August 19,] 1841, [5 Stat. 440,] which determined the question, and Judge Hall states, that but a single case—In re Farnum, [Case No. 4,674]—in which this question appears to have been decided had come under his observation.

[Judge Hall says, that when these notes were dishonored the bank was the legal creditor of the several parties thereto, according to the form of their several and respective obligations, and there is no reason for holding that the legal relation of debtor and creditor thus subsisting, did not exist under the bankrupt law. Judge Hall holds that the bank had a right to prove its debts against the makers of the note held by it, and is entitled to dividends from the joint and separate estates of the bankrupts, according to such proof; and that the utmost that can be claimed against the bank is, "that it may be driven to its election;" but in the next paragraph the judge thinks it doubtful whether the bank is compelled to elect, and referring to the case of Farnum, decided by Judge Sprague under the bankrupt law of 1841, intimates that a creditor who holds a bill of exchange drawn by the firm and endorsed by one of the members, was entitled to dividend from the joint estate of the firm, and also a dividend from the separate estate of the partner who made such endorsement, and quotes from the Farnum case the declaration of Judge Sprague, "that the right of a party holding two valid obligations, to the benefit of both, was founded both in law and justice." In Borden v. Cuyler, 10 Cush. 478, cited by Judge Hall, Judge Cushing, in delivering the opinion of the court, declared that it remained a mooted question in the United States, and that in Massachusetts the practice and the weight of professional opinion favored the double proof, but that the point had not then been adjudicated.

[The weight of American authority favors the right of a creditor who has a contract joint as to the firm and several as to one or more of the partners, to prove against the firm and the individual partner or partners, and to receive dividends from the joint and individual assets. I have no doubt that the creditor is entitled under his proof to dividends out of the several assets of the individual bankrupts, resulting in the payment in full of the bond.] [3]

BLATCHFORD, District Judge. I concur with the register, that the creditor, John Bigelow, is, under his proof of debt, entitled to dividends out of the several assets of the individual bankrupts.

The register also submitted to the court a bill, which had been presented to the assignee by counsel for the bankrupts, for services in attending on the return of the order to show cause, and successfully resisting two of the grounds on which the adjudication of bankruptcy was sought, and also for services in preparing the inventories and schedules required, under the order of adjudication of bankruptcy, to be prepared and filed by the bankrupts.

BLATCHFORD, District Judge. I do not think the bill is a charge against the estate of the bankrupts in the hands of the assignee.