## Case No. 1,398.

### In re BIGELOW et al.

[3 Ben. 198; [1] 2 N. B. R. 556, (Quarto, 170;) 2 Am. Law T. Rep. Bankr. 87.]

District Court, S. D. New York. April, 1869.

BANKRUPTCY—DEBT TO WIFE.

Where a wife having received money from her father's estate, put it in her husband's hands, with the verbal understanding that she was to have it when she wanted it, and afterwards drew all but $700, and it appeared that the husband had at various times given her furniture and stock, and taken out policies of life insurance for her benefit, and her husband was, some seven years after the receipt of the money, declared a bankrupt: *Held*, that the wife was entitled to prove the $700, without interest, as a debt against her husband's estate.

[Cited in Re Blandin, Case No. 1,527; Clark v. Hezekiah, 24 Fed. 665.]

[In bankruptcy. In the matter of Edward Bigelow, David Bigelow, and Nathan Kellogg, doing business as the firm of E. & D. Bigelow & Co. Heard on application by Mary B. Bigelow to prove a certain claim and the register's report thereon. Proof allowed.]

---

[3] [From 2 N. B. R. 371, (Quarto, 121.)]
[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

In this case objections were filed by creditors to a claim of Mary B. Bigelow against the estate of her husband, Edward Bigelow. The court referred the matter to the register to take proof of the facts, and report to the court, with his opinion.

The register reported that the evidence seemed to establish the following facts:

1. Between July, 1859, and the spring of 1861, Mrs. Bigelow came into possession, by two several payments, of about $1,500 from her father's estate.

2. This money she handed over to her husband for safe keeping, with the verbal understanding that she was to have it when she wanted it.

3. She subsequently drew all but $700 of this money from her husband to purchase silver plate, leaving in her husband's hands the sum of $700, which she now claimed, together with interest thereon from 1859.

4. Her deposition for proof of her claim set out the demand as follows: "Is justly and truly indebted to this deponent in the sum of $1,141.00, being the balance of money belonging to this deponent, as her separate estate, which was left to this deponent by her father, David Boies, and which this deponent lent to her husband, the said Edward Bigelow, about 1859. The principal sum thus had by the said Edward Bigelow, as aforesaid, was $700, which, together with interest to the 16th of November, 1867, amounts to the said sum of $1,141.00," to which was added the formal part of the deposition.

5. No note or writing was made of this transaction, nor did Mrs. Bigelow keep any written account of the amount placed in, or drawn from, her husband's hands. She testified: "I kept along from year to year, as I expended money, a recollection as to the balance remaining due to me."

6. In August, 1863, she received from her husband, out of this fund, $20.00.

7. It was shown on the part of the contesting creditors, by the examination of Edward Bigelow and his wife, that, since their marriage, Mr. Bigelow had given his wife certain household furniture, also a horse, harness, carriage, and sleigh, some stock in a silver mine, which cost $100, and also 20 1-5 shares of turnpike road stock, on which $12.60 per share had been paid. There were also life insurance policies taken out for the benefit of Mrs. Bigelow and the children; and Mrs. Bigelow received $120 as the proceeds of hay raised upon Bigelow's farms, and sold by Mrs. B. in the fall of 1867, at or about the time of the commencement of bankruptcy proceedings against her husband.

By THEODORE B. GATES, Register:

[2] [There are some apparent inconsistencies in Mrs. Bigelow's evidence — yet I think they are more apparent than real. She relied entirely upon her recollection to keep the account of this fund, or rather of the

---

[2] [From 2 N. B. R. 557.]

amount due to her from time to time, dismissing from her mind the particulars in relation to what had been drawn and expended. If the expression "I kept along from year to year, as I expended money, a recollection as to the balance remaining due to me," is understood, as I have no doubt it was intended, to refer to the eight hundred dollars which she spent for silver plate, and that this expenditure was made in several smaller sums, and at sundry times; and that in speaking of the "balance of money belonging to her" and of the "principal," she refers to the sum of seven hundred dollars as a part of the fifteen hundred dollars, which she had let her husband have, and which, alone, she then regarded as the loan or trust held by him for her—wiping out, as it were, dollar after dollar, until about seven hundred dollars remained—then the testimony becomes consistent and intelligible. And taking this view of it I have no difficulty in arriving at the conclusion that at the time of Edward Bigelow's bankruptcy he was indebted to his wife in the sum of seven hundred dollars, and that equity would hold him to be her trustee for that amount.

[The proof negatives the theory of the contesting creditors' solicitor, that this was a gift and not a loan or trust. Mrs. Bigelow expressly swears that her husband was to hold this money for her, and that she was to have it when she wanted it. While the law regards with great distrust claims of this character, equity will protect the rights of the wife even against the creditors of the husband. The court being satisfied that the money was the separate property of the wife, and was placed in the husband's hands as a loan or trust for the benefit and use of the wife, and not as a gift, will adjudge him to be her debtor to that amount, and will award payment to her as to any other creditor. Woodworth v. Sweet, 44 Barb. 268. This was so held even before our statutes in relation to the separate estates of married women, and is founded upon the plainest principles of equity.

[I have had some difficulty in arriving at a satisfactory conclusion as to the exact amount of money of the claimant's remaining in Mr. Bigelow's hands at the time of his bankruptcy; but I think a reasonable and fair construction of Mrs. Bigelow's evidence justifies the conclusion, that over and above all sums which she had from time to time "drawn" out of this fund, for silverware and for other purposes, through a period of seven or eight years, there still remained of the original fifteen hundred dollars, the sum of seven hundred dollars, which Mrs. Bigelow came to regard and speak of as though it alone was the basis of her claim.

[In the absence of any agreement to pay interest, and in view of the fact that Mr. Bigelow's relation to this fund was that of

trustee for the benefit of his wife, I do not think it carries interest—certainly not until after demand.

[The various transfers of items of personal property from Mr. Bigelow to his wife, at different times during their married life, and previous to his bankruptcy, are proven to have been gifts, and are neither numerous nor of much value. They were not given by him or received by her on account of his indebtedness to her, or with any reference to such indebtedness. They were such gifts as the position of the donor justified him in making and the donee in accepting. The time when made, the circumstances of the parties, and the nature of the gifts, repel the idea that they had any other character than that attributed to them by Mr. Bigelow.

[If these were purely and simply gifts from husband to wife, I do not understand how they can be held to be payments. To make them such, would be to create an unthought-of contract between the parties, and to pervert an act of respect and affection into the sordid channel of barter and traffic. The solicitor for the contesting creditors insists that if these things were given by the husband to the wife, then the seven hundred dollars must have been given by the wife to the husband. I am unable to see any necessary connection between the premise and the conclusion. Even if the deduction were logical, it would be overturned by the positive evidence that one was a loan and the other a gift.

[It is true, that "he who asks equity must do equity," but this wholesome rule has never been held to authorize the marshaling of the reasonable and proper gifts a husband may make to his wife, and offset them against a fund held by the husband in trust for the wife. If the gifts were disproportioned to the circumstances of the parties, or there were reasons to suspect the motives with which they were made, the court might enforce the principle in the manner and to the extent demanded by the contesting creditors.

[It is a common practice, supported by law, for husbands and parents to insure their lives for the benefit of wives and children. Mr. Bigelow has done so. While the wife acquired a property in the policy taken out for her benefit and in her name, she does not appear to have incurred any liability therefor.

[There is no proof that she authorized or suggested such insurance, nor is there any proof as to the present value of the policy. Whether it is ever of value to Mrs. Bigelow, depends upon the payment of the annual premiums and the tenure of their respective lives. I do not think it constitutes an equitable offset to Mrs. Bigelow's claim.

[Mrs. Bigelow sold and received payment for about one hundred and twenty dollars worth of hay, grown on her husband's farm shortly before his bankruptcy. I think it fairly inferrible from all the evidence, that this money was used by her for the benefit of her family, and that it was not received for or used as her separate property. In swearing to her claim, and in her subsequent examination, she does not refer to it, and I assume that she did not regard it as her money or apply it to her own use, but that it went to defray the current expenses of the family.

[My conclusion is, that Mary B. Bigelow has a just claim against her husband's estate for the sum of seven hundred dollars, and that she should receive her dividends thereon with the other creditors.][3]

M. Schoonmaker, for claimant.

P. Cantine, for creditors.

BLATCHFORD, District Judge. I concur in the views of the register. [An order will be entered admitting Mrs. Bigelow as a general creditor to the amount of seven hundred dollars.][4]