## THE BERKSHIRE WOOLEN COMPANY, Plaintiff, *v.* AUGUSTUS D. JUILLARD, Receiver, and others, Defendants.

*Bond signed by partners individually — when it constitutes a firm obligation — Remedy against the individuals and also against the receiver of the firm.*

In April, 1873, two mills in the State of Connecticut were indebted to the firm of Hoyt, Spragues & Co., in the sum of $1,000,000, the payment of which was guaranteed to them by one Chapin; one of the members of the firm, acting in behalf of the firm and of Chapin, applied to certain banks for the purpose of procuring a loan of $600,000, which loan was made upon the execution of a joint and several bond for that sum by Chapin as principal, and by the indi-

vidual members of the firm of Hoyt, Spragues & Co., as sureties, and of a mortgage as collateral thereto, given by Chapin. The money arising from the loan was applied upon the debt guaranteed by Chapin. Subsequently the firm of Hoyt, Spragues & Co. became insolvent, and default having been made in payment of the interest, the mortgage was foreclosed. In this proceeding it was sought to recover from the receiver of the firm assets, the deficiency arising upon the sale.

*Held,* that as the bond, although signed by the members of the firm, as individuals, was in fact given to secure the payment of a debt due to the firm, and was for its benefit, it was, therefore, a firm obligation, and was payable out of its assets.

*Held,* further, that the fact that actions had already been commenced in this court against the surviving sureties, and the execuors of those who were dead, did not prevent its enforcement against the firm.

APPEAL from an order made at the Special Term overruling exceptions to the report of a referee.

By the decree in this action, dated January 6, 1876, it was adjudged that the firm of Hoyt, Spragues & Co. was insolvent, and that the estate, assets and effects of said firm in the hands of the defendant Juillard, receiver, constituted a fund, out of which the plaintiff, a creditor of said firm, and other creditors, upon proof of their claims, were entitled to be paid in accordance with their respective rights.

William P. Dixon, Esq., was by said decree appointed referee, to take proof of the claims of the creditors of Hoyt, Spragues & Co., filed with him, and of any objection thereto, and to determine the validity of such claims so presented to him.

Five savings banks in Providence, viz.: The People's Savings Bank, the Franklin Institution for Savings, the City Savings Bank, the Union Savings Bank, and the Cranston Savings Bank, accordingly filed with the referee a claim (No. 499) against the assets of the firm of Hoyt, Spragues & Co. Proof was taken in support of said claim, and when the claimant rested the counsel for the receiver moved to dismiss the claim. The motion was granted by the referee. Before the filing of the referee's report the claimants requested the referee to make certain findings of fact. He declined to do so, and the claimants duly excepted. The referee thereupon filed his report, to which exceptions were duly filed by the claimants. The claim filed with the referee is based upon a bond made by Josiah Chapin, as principal, and the several members of the firm

of Hoyt, Spragues & Co., viz.: Edwin Hoyt, William Brenton Green, Amasa Sprague, William Sprague, Nehemiah Knight and Albert S. Gallup, as sureties, to the banks above named. The bond in terms bound the obligors in the sum of $1,200,000, and for the payment of that sum the obligors "bind themselves and each of them, and any six, five, four, three or two of them, their and each of their and any six, five, four, three or two of their heirs, executors and administrators, jointly, severally and respectively, firmly by these presents."

The receiver's counsel and the counsel for plaintiff in the above-entitled action filed objections to the claim being entertained by the referee, which may be briefly stated as follows, viz.: The claim as presented is not a claim against the assets of the firm of Hoyt, Spragues & Co. It is, at best, a claim against the several estates of the members of said firm and against their joint estates, but not against their partnership estate.

Evidence was offered by the claimants and appellants before the referee tending to establish that for some time prior to the 4th of April, 1873 (the date of the bond), the Riverside Mills and the City Woolen Company had had business relations with the firm of Hoyt, Spragues & Co., and were then indebted to that firm in an amount exceeding $1,000,000. Josiah Chapin, of Providence, the principal obligor of the above-mentioned bond, had duly guaranteed the indebtedness of the Riverside Mills and the City Woolen Company to Hoyt, Spragues & Co. Mr. Gallup, one of the above-named sureties, and a member of said firm of Hoyt, Spragues & Co., acting on behalf of such firm, negotiated a loan from the above-named banks, the claimants, of $600,000 for the purpose of enabling Mr. Josiah Chapin to reduce the indebtedness of the respective mills above named to the firm of Hoyt, Spragues & Co., which the mills were unable to pay, and for which he (Chapin) had become guarantor. For the purpose of accomplishing this object and loan, Mr. Gallup, acting on behalf of the firm of Hoyt, Spragues & Co., visited the banks in Providence, and accordingly arranged the matter, as hereinafter stated. The banks acceded to the proposition on the following terms: A bond to be executed for the sum of $1,200,000 by Mr. Josiah Chapin, as principal, and the members of the firm of Hoyt, Spragues & Co., as sureties, the bond to bind the joint and seve-

ral estates of the members of the said firm. As additional security for said bond, Josiah Chapin was to execute and deliver to certain trustees a mortgage upon certain real estate situated in Providence. The sureties named in the bond were to covenant with Josiah Chapin that they, and not the said Josiah Chapin, should pay the interest on the bond and the taxes, etc., on the real estate so mortgaged. The money was to be paid on the order of Chapin directly to Hoyt, Spragues & Co. The agreement so entered into was carried out. The first six months' interest was deducted from the loan. The second six months' interest was paid by the firm of Hoyt, Spragues & Co. The banks not having advanced, *inter sese,* an equal amount of money towards the loan, in order to designate, as between themselves, the exact amount which each had advanced to the common pool, required Mr. Chapin to deliver simultaneously with the execution of the bond and mortgage to each of them his promissory note, "for the sake of convenience," for the several sums of money which each bank advanced to the common loan. The notes were so executed and delivered for the purpose designated, *i. e.,* "for the sake of convenience," and it was so expressed in the bond. Default was made in the payment of the principal, and thereupon the trustees named in the mortgage duly disposed of all the real estate, and after accounting for all the net proceeds of the sale, a deficiency exists on the bond to an amount exceeding $325,000. The claim of the claimants and appellants consists of such deficiency.

*Chas. Tracy, Chas. M. Da Costa* and *L. H. Arnold, Jr.,* for The People's Savings Bank and others, claimants and appellants. The fact of the firm name not having been signed to the bond, though executed by all the members of the firm, does not prevent its being regarded as a firm obligation. (*Ex parte Hunter,* 1 Atk. Ch., 223, p. 225; *Galway* v. *Matthew,* 1 Campb., 403; *Filley* v. *Phelps,* 18 Conn., 295; *Agawam Bk.* v. *Morris,* 4 Cush., 99; *De Jarnett's Executors,* 31 Ala., 232, 233; *Burnley* v. *Rice,* 18 Texas, 481; *Harrison* v. *Jackson,* 7 T. R., 203.) The doctrine of election which prevailed in England at one time, as applied to cases like the present, has long since been exploded there. (*Ex parte Stone* [Law Rep.], 8 Ch. App., 914.) It never obtained a foothold in this country, for it is well settled by both State and national

authorities that where a valid claim exists against a joint and several fund in bankruptcy or in insolvency, it can be enforced against both, although, of course, it can only be collected once. (*In re Farnierer*, 6 Law R., 21; *In re Bigelow*, 2 N. B. R., 371, 373; id., 3 Ben., 146; 7 N. B. R., 217; *Mead v. Nat. Bk. of Fayetteville*, 6 Blatch., 180; Story's Eq. Jur., § 645; *In re Bradley*, 2 Bis., 517.)

*Thomas H. Hubbard*, for the plaintiff, respondent. A joint and several obligation in writing executed by partners in their individual names, and not in the name or style of the partnership, is not a partnership obligation. Nor can the holders, in case of insolvency, claim from the partnership funds. (Parsons on Part., 125, 126, 215; 1 Lindley on Part., 355; *Turner v. Jaycox*, 40 N. Y., 470; *Nat. Bk. of Salem v. Thomas*, 47 id., 15; *Forsyth v. Woods*, 11 Wal., 484; *Perring v. Hone*, 4 Bing., 32; *Crouch v. Bowman*, 3 Humph., 209; *Marshall v. Colman*, 2 Jac. & W., 266.) The parol testimony offered by the claimants to show that the bond was intended to create a partnership liability was wholly incompetent and immaterial, and the referee was right in not basing any finding upon it. (*Belloni v. Freeborn*, 63 N. Y., 383, 389; *Gates v. McKee*, 3 Kern., 232, 235; Greenl. on Evi., §§ 277, 282; *Brown v. Curtiss*, 1 Comst., 321; *Goodell v. Smith*, 9 Cush., 592, 594; *Poppenhusen v. Seeley*, 3 Keyes, 150, 153. Although at law the partners might be sued and the property of the firm as the joint property of six of the parties taken under execution, this has no bearing upon the distribution of partnership assets in equity after the firm has become insolvent. A bond signed by the members of a firm in their individual names, as sureties, is not a claim against the firm in bankruptcy or insolvency proceedings, even when the consideration passed to the firm. (Bump on Bankruptcy [9 ed.], 245; *In re F. F. Holbrook & Co.*, 2 Lowell's Dec., 259; *In re Webb v. Johnson*, 2 Bank. Reg., 614; *In re Bucyrus Machine Co.*, 5 Bank. Reg., 303; *In re Miller*, 1 N. Y. Leg. Obs., 38; *In re Herrick*, 13 Bank. Reg., 312; *In re Weston*, 12 Metc., 1; *Harmon v. Clark*, 13 Gray, 114, 122; *Gay & Co. v. Johnson*, 45 N. H., 587; *Maynard v. Fellows*, 43 id., 258; *Forsyth v. Woods*, 11 Wal., 484; *In re Roddin & Hamilton*, 6 Bis., 377.) The claimants have elected to proceed against the separate estates of the individuals who executed the

bond, and would thereby have waived their right to proceed against the joint estate had such a right ever existed. (Lindley on Part., 1013–1025 ; Collyer on Part., §§ 940–948 ; *Ex parte Hill,* 2 Dea., 249 ; Burge on Suretyship, 500 ; Avery & Hobbs on Bankruptcy, 308 ; *Mead* v. *Nat. Bk.,* 2 Bank. Reg., 177 ; *In re F. F. Holbrook & Co.,* 2 Lowell's Dec., 262, U. S. Dist. Ct. for Mass., 1877 ; *In re Howard, Cole & Co.,* 4 Bank. Reg., 577 ; *Mead* v. *Nat. Bk., supra.*)

BRADY, J. :

It is, to my appreciation of the facts developed in this proceeding, quite apparent that the engagement of the members of the firm of Hoyt, Spragues & Co. as sureties for Chapin was directly connected with the interest, and therefore for the benefit, of the firm as such. The facts seem to leave no room to doubt this deduction. They were the creditors of Mr. Chapin, and one of them acting on behalf of the firm, and for Mr. Chapin as well, negotiated a loan from the claimants, the amount of which was to be applied to reduce the indebtedness of Mr. Chapin. The loan was made to him, and he was therefore the principal, but the members of the firm for considerations expressed in the instrument became sureties for the payment of the loan, which, through the instrumentality of one of its members, was accomplished and for the benefit of the firm. In other words, the money was thus obtained to pay a part of the indebtedness of Chapin to the firm, and in order to secure it they guaranteed its payment. The transaction was in effect a *quasi* loan to the firm, which they might or might not be called upon to refund, that incident depending upon the value of the pledge made by Chapin and his ability to meet the obligation imposed by the loan. The money having been thus received and used by the firm, their joint and several obligation was in legal effect, though not in precise terms, the undertaking of the firm for its benefit and advantage. The members of the firm by it assumed an obligation for their joint advantage as a copartnership, the whole transaction having no other object in view. When a joint obligation is executed by the individual members of a copartnership for a consideration passing to it, although it be not in the name of the firm, the liability incurred becomes one of the partnership, and when matured is enti-

tled to priority of payment out of the assets over the private debts of the copartners. There is no distinction in favor of debts directly contracted in the firm name. If the debt exists as one of the firm, its *status* is instantly determined. (*Ex parte Hunter*, 1 Atk. Ch., 225, and cases cited; *Galway* v. *Matthews*, 1 Campb., 403; *Filley* v. *Phelps*, 18 Conn., 295; *Agawam Bk.* v. *Morris*, 4 Cush., 99; *Turner* v. *Jaycox*, 40 N. Y., 470; *Forsyth* v. *Woods*, 11 Wal., 484.)

In the last case Mr. Justice STRONG said: " If a firm be composed of two persons associated for the conduct of a particular branch of business, it can hardly be maintained that the joint contract of the two partners made in their individual names, in respect to a matter which *has no connection with the firm business*, creates a liability of the firm as such." (See, also, *Franklin* v. *Fairchild*, 64 N. Y., 471.)

The reporter's note in *Turner* v. *Jaycox* (*supra*) does not seem to be warranted by the case. One of the questions therein considered was whether a note made by the members of a firm, though not in the firm name, and given for money used by the firm, was a partnership debt, and it was declared to be of that character. The doctrine that a joint note of individual partners was not, *per se*, a partnership debt was doubtless appended to prevent any misunderstanding of the opinion delivered. If such was not its object, then the reporter's note seems to have been unnecessary.

If the question be considered in reference to the intention of the contracting parties, there is little opportunity for discussion as to the intent. No other surety. than those composing the firm was called upon to unite in the obligation given, and no one was interested in the consummation of the transaction but Chapin and the firm, but more particularly the latter, to whom the proceeds all went, and whose obligations to each other when the money was received immediately became those of partners *inter sese*. The money became assets at once, and becoming thus amalgamated, continues to be represented by what is left either in whole or *pro tanto*.

The counsel for the receiver seems to think that the claimants having commenced an action against the surviving obligors and the executors of Hoyt and Knight, they have waived any right to proceed against the joint estate, if such ever existed. This is an erroneous view of the effect of the procedure mentioned. In several

cases it has been held that the creditor had the right in bankruptcy, to prove his debt against the firm and an individual member signing the obligation, and was not obliged to elect. (*In re Bigelow*, 2 N. B. R., 371, 373 ; *Emery et al. Assignees* v. *The Canal Nat. Bk.*, 7 id., 217 ; *In re Bradley*, 2 Bis., 517.)

The opinion of Justice CLIFFORD, in *Emery* v. *The Canal National Bank*, is elaborate and exhaustive, and the conclusion is in accord with what is stated. The assignee applied in that case to compel the claimant to elect, but the court declared he could proceed against both estates, namely, that of the firm and that of the individual partner. In *In re Bradley*, Justice MULLIN said : "I think the court has no judicial power to restrict the right of the creditor to pursue the joint and several debtors for the collection of his debt in the manner known to the law." If there be any restraint tolerable in such cases, there seems to be more propriety in requiring the creditor to pursue the joint property and to exhaust it before resorting to the individual estate, because the joint fund is primarily liable to the payment of joint obligations. Here the effort is to obtain payment out of the joint estate, and the effect, if payment be made, would be to increase the personal or individual property, and in that way to enlarge the security for the individual creditors. Although it may be justly said that there is some conflict of authority in regard to it, and which to some extent is discussed in the cases cited, nevertheless considering the organization of courts and the object of their creation, the dictates of reason result in the proposition that the creditor may seek the property of his debtor in whatever form it may be found, unless exempt by law, and the authorities cited sustain such a doctrine. Whatever estate may be applied, the debt can be collected but once, and until collected the creditor is by law entitled to his remedy.

For these reasons the exceptions to the referee's report should be sustained, the order appealed from reversed, and an order entered directing the referee to allow the claim of the appellants.

DAVIS, P. J., and DANIELS, J., concurred in the result.

Order reversed and order entered as directed in opinion.