### SUPREME COURT.

The North River Bank in the city of New York agt. William F. Schumann and Charles T. Brown.

*Assignment — What acts do not show a fraudulent intention, or void the instrument.*

Where, in a suit brought to set aside a general assignment for fraud, it appeared that the assignor, at the request of the assignee, promised in advance to render services which might be needed:

*Held,* that this did not show a fraudulent intention; nor should the fact that the assignor, previous to the assignment, stated to the assignee that he expected or had reason to believe, that the assignment would prove temporary only, void the instrument where there is nothing in it showing that it was executed for any purpose other than that which is lawful.

Though the goods of the assignor may have been sold at auction, the fact that they were sold at private sale and it took two months to dispose of them, did not invalidate the assignment.

Though such transfers, with preferences, do more or less hinder and delay creditors, yet, as long as the disposition is itself legal in form, it cannot be voided unless actual fraud be present, and such fraud must be proved; but it is not established by acts consistent with honesty.

*Special Term, August,* 1882.

*Nelson Smith,* for plaintiff.

*John A. Mapes* and *A. L. Sanger,* for defendants.

North River Bank agt. Schumann.

VAN VORST, *J.* — After a careful examination of the evidence in this case, I have reached the conclusion that I would not be justified in setting aside the assignment of his property made by the defendant Schumann to Brown.

There are some facts and circumstances which the evidence discloses which may well be regarded as suspicious, but I do not think that they necessarily establish fraud in the making of the assignment. It is quite true that before Brown would agree to take the assignment, or assume the execution of the trust, he required an assurance from the assignor that he would personally aid him in closing the same, at least that he would give his attention to the care and sale of the goods. For such service, if rendered, he would justly be entitled to some compensation. It is quite likely that Schumann readily gave such assurance. He certainly had an interest that the trust should be well and carefully managed. The fact is that the assignor did aid, after the assignment, in disposing of the merchandise by sale, but whatever he did was under the assignee. But the facts hardly come up to the case of a condition imposed by the assignor — that he should, in all events, be retained by the assignee in disposing of the property and be paid for his services out of the proceeds of the assigned estate. The suggestion came not from the assignor, but from the assignee.

The fact is conspicuous that Brown hesitated about accepting the assignment. It is evident that he did not want the trust, and only agreed to take it after the promise of the assignor of aid in the direction named. The assignee must have servants and agents in disposing of the property, and why should the assignor, if competent and honest, be excluded? And as there cannot necessarily be anything fraudulent in the fact that an assignor familiar with the merchandise and its value is employed by the assignee in both taking care of and selling the property under him, so I cannot think that a fraudulent intention is shown where the fact appears that the assignor, at the request of the assignee, promised in advance

to render a service which might be needed. Intention gives character to acts.

It would be manifestly different, and might well give rise to an implication of fraudulent motive, if terms of the nature of those under consideration were dictated, by a person proposing to make an assignment, as a condition of the transfer, or if it could be clearly seen that such was the purpose of the assignment. But where acts and suggestions may be attributed to good and honest motives, we are not called upon to characterize them as the outcome of an absolutely fraudulent intent.

Nor should the fact that the assignor, previous to the assignment, stated to the assignee that he expected, or had reason to believe, that the assignment would prove temporary only, avoid the instrument. In this instance hope was evidently father to the thought, and its expression in words. The assignor had been suddenly, and without expectation, embarrassed by the failure of a person whose notes he had indorsed to a large amount. When the idea was first suggested to him that he would be compelled to make an assignment and his business be destroyed, he supposed that the notes would be provided for by or out of the property of the person for whose accommodation he had made the indorsements, and that he might in the end, without further sacrifice, be restored to his property by an arrangement with the creditors whose claims had arisen in the prosecution of his own business. But in that hope he was disappointed. And when the assignment came to be made, in so far at least as the assignor and the deed itself is concerned, it was wholly unconditional, and the transfer for the purposes of the trust was complete, and in so far as I can discover and believe, it was honest, and not designed to defraud the creditors.

Although the assignee had exacted from the assignor a promise to serve him, he was not bound at all events to employ him. If he could get along without his services he could dispense with them. If it could be seen from the evi-

dence that it was a direct object of the assignment to hinder and delay creditors, or to coerce them to a compromise of their claims, the plaintiff's case would be clear enough. But there is nothing in the assignment which shows that it was intended to be temporary only, or that it was executed for any purpose other than that which is lawful.

The fact that a man may honestly believe that an adjustment of his affairs may yet be reached which would prevent a further sacrifice of his property should not invalidate an assignment made by him for the benefit of his creditors, unless such belief in the end finds formal expression in the language of the deed, or in a contemporaneous agreement between him and his assignee, which would hamper him in an expeditious closing of the trust according to its terms.

From the evidence, I have no doubt that the assignee took possession in good faith. It is not correct to say that the assignor was in possession after the assignment, either solely or in connection with the assignee or others. As the legal title was in the assignee, so was the full possession. Schumann and the other employees were under the assignee Brown. The persons appointed by the assignee, as well the former bookkeeper as the assignor himself, to care for and sell the merchandise, as the evidence discloses, met their duties prudently. The instructions which the assignee gave them were explicit and business-like. An inventory was directed to be at once taken, and that was done, and the property appears to have been well sold. The assignee certainly gave a degree of personal attention to the matter. I cannot say that it was insufficient. He was himself a business man, and the nature of the trust was not such as to call for his constant presence. The presumption arising from the facts is, that he gave all the care needed, and I find nothing to impeach his honesty or good faith in the management of the trust.

There was no reservation of property to the assignor, and there was neither negligence nor want of care or knowledge in the way the merchandise was sold. The prices realized

were fair, and the proceeds of the sale, in so far as they have been applied, went in the direction and to the purposes declared in the assignment.

It is not an accurate statement to say that the business was carried on after the assignment the same as before. Business, in the ordinary sense of the word, was not carried on at all. What was done was to sell the merchandise in closing up the trust. The stock was not replenished. It is true that the goods might have been sold at auction; but the assignee was certainly vested with a discretion as to the manner of sale. It took about two months to dispose of the goods.

I cannot find that the expenses of the trust were unusual, and up to the present time the assignee has clearly received nothing for himself, and, as I understand his evidence, he has not demanded anything.

Whilst equity favors equality, yet the law tolerates preferential assignments, and the one under consideration is an instrument of that nature. Such transfers always bring disappointment to creditors who are not included in the favored class. Such assignments have given occasion to much criticism and litigation. They have been closely watched by creditors and scrutinized by the courts, and whenever there has been found fraud in their execution they have been rejected.

In this instance the assignor was moved, without doubt, to act promptly, in the apprehension that his property might be suddenly seized upon process at the suit of those who held the paper which he had indorsed. Such vigilant action by the creditors would have exhausted all the debtor's property, to the exclusion of his own business creditors. The assignor was a non-resident of this state, although he transacted business in the city of New York.

The learned counsel who conducts this litigation for the plaintiff, before the transfer which is the subject of this litigation, himself advised the defendant Schumann that it would be prudent for him to make an assignment of his property in view of his then embarrassment.

Assignments are not commonly made unless the parties are in apprehension of hostile proceedings at the instance of others which would interfere with such disposition of their property lawfully to be made as they would prefer ; and such transfers do more or less hinder and delay creditors. But as long as the disposition made is itself legal in form it cannot be avoided unless actual fraud be present. And such fraud must be proved ; but it is not established by acts consistent with honesty.

My attention has been called by the plaintiff's counsel to other matters, which are claimed by him to be evidence of fraud, but I do not so regard them, as they are not inconsistent with an honest intention.

I can find no sufficient cause in law or fact to impeach this transfer, and the plaintiff's complaint is dismissed, with costs.