Vann, J.

— The object of the assignors in making the general assignment, and of the assignee in accepting it, was to hinder, delay and defraud creditors. The contestant not only knew this at the time, but actively helped the fraudulent scheme along. Creditors, however, have the right to waive the fraud, accept the assignment and come in under it. (Papal/) e agt. Stewart, 27 JV. Y., 310; Mills agt. Argali, 6 Paige, 577). They all seem to have done so in this ease and hence it is the duty of the court to enforce the trust upon the application of any one having a valid debt against the assignors. ISTo party to this controversy makes any claim hostile to the assignment, but all claim under and in confirmation of it.
The first question to be decided is whether the assignment covered both the firm and individual property of the assignors, or firm property only. As the contestant is not a firm creditor, he has no standing in court upon this accounting if the assignment covered only firm property, and was for the sole benefit of firm creditors. While, as an individual creditor of two of the assignors, it would be for his interest that any surplus going to them should be as large as possible, he could only reach that surplus by perfecting judgment against his debtors and acquiring a lien upon it as a judgment creditor. Otherwise he would have no interest in it that could be pro *85 tected upon this proceeding, unless the assignors assigned individually as well as copartners.
The practical construction given to the assignment by the assignors and the assignee is of slight importance, as it does not appear from their conduct in creating or administering the trust that they were controlled either by judgment or principle. The powers of the assignee in administering the trust and of the courts in controlling such administration are confined to the express terms of the assignment (In the Matter of Lewis, 81 N. Y., 421; Chapin agt. Thompson, 89 N. Y., 270, 279). The instrument creating the trust is both the foundation and the boundary of those powers.
If the assignors assigned jointly, or as copartners only, neither the assignee nor the courts can reach the individual property of any one of them in any proceeding under the assignment, or in any attempt to enforce it.
The assignment, when reduced to an outline or framework, is in substance, as follows: “We, D., J., B. & E., all of Utica, comprising the firm of D., J., B. & Co., doing business as manufacturers in Utica, for one dollar to us paid, hereby assign to P., all of our personal and real property not exempt from execution, in trust for our creditors. We direct said trustee to take possession of all our estate and convert the same into cash for our creditors. We direct him, out of the proceeds, to first pay expenses of administration; and, whereas divers persons have each indorsed notes and drafts for our use and benefit and for the benefit and accommodation of our firm, and we have given a mortgage on our stock and goods to P., the first indorser on most of said paper which has been used by us and is now held by parties to us unknown, we therefore direct said trustee to pay all of said paper and bear said indorsers harmless from liability on account of indorsements for our said firm. We direct that said assignee next pay all of our debts in full, reserving to ourselves all moneys that may remain in his hands after payment of all our debts. Witness our hands and seals.”
*86 Thus from the beginning to the end of this instrument it seems to be Wholly and exclusively a joint or firm contract. It in effect says: “ We, composing a firm, assign our property to pay our debts, reserving any surplus to ourselves.” The subject of the assignment was “ our property,” which includes all and only such as the assignors owned jointly or .as partners. The object of the assignment, at least when it is gathered from the instrument itself, was to pay “our debts,” or indorsements for “ our said firm,” which necessarily excludes any but joint or firm debts.
The deed of trust is silent as to individual assets and individual debts. Whether either existed cannot be told from reading it. The description of the assignors, their property and indebtedness, the form of the granting clause, the recitals, the naming of creditors, the directions to the assignee, and the reservation of the surplus, all indicate a joint undertaking. Ho words of severance appear in the instrument. The joint form of expression is used exclusively. Words with a plural meaning, such as “ we,” “ us ” and “ our,” are constantly used, but no word of separation, with a singular or several meaning. The word “ our ” does not have a joint and several meaning. That would be expressed by “our and each of our.” The assignment must be construed to cover individual property and to provide for the payment of individual debts, before it can be held that the claim of the contestant should, be paid. This cannot be done without holding that the word “ our” and the expression “ our and each of our ” are convertible terms.
The intention of the parties, throwing out of view the fraud which all intended to perpetrate upon creditors, and which is a constant embarrassment in any attempt to construe the writing as an honest business undertaking, whether ascertained from the words used, or from the circumstances surrounding the contracting parties, or both, is the same. It appears from the evidence that the firm owned a large and valuable stock of goods, with accounts and other personal *87 property, but no real estate. Two of the assignors owned no individul property, and the other two owned none except some real estate of no appreciable value above incumbrances. The firm was largely indebted and probably insolvent. Two of the assignors owed nothing individually, but each of the others owed more than his individual property was worth. It is therefore to be presumed that the object of the assignment was to transfer firm property to pay firm debts. Whatever its form, it could have no other practical effect, as there were no individual assets worth mentioning for it to operate upon. Ho reason can be found in the circumstances surrounding the assignors when they assigned, for giving a more extended meaning to any term used by them than its ordinary and natural signification.
Moreover the creditors in the first class were to be paid in full from the proceeds of all the property assigned. Did the assignors intend to execute an instrument void upon its face by providing for the application of individual property to the payment of copartnership debts ?
I think that the assignment does not cover individual property, nor provide for the payment of individual debts. This construction is supported by the following authorities: Morrison agt. Atwell (9 Bosw., 503); Turner agt. Jaycox (40 Barb., 164, 172; affirmed on appeal, 40 N. Y., 470, 472); Collumb agt. Collumb (16 N. Y., 484); The Berkshire Woolen Co. agt. Juillard (75 N. Y., 535); Perry on Trusts (secs. 345, 579 and 641); 1 Parsons on Contracts (6th ed., p. 2, and note).
The exemption clause of the assignment and that granting real property are relied upon as supporting the theory that individual property was transferred. This position is not without force, but, as those clauses may have been used from more abundant caution or adopted from the usual form, I think it must yield to the points already suggested which impress me as of greater force.
But even if the construction placed upon the assignment *88 by the learned referee is correct, the position of the contestant that he should be paid' in full to the exclusion of the firm creditors cannot be allowed to prevail. After so aiding the assignors in their efforts to defraud creditors that un preferred claims received substantially no dividend, he slept upon his own' rights until the claims of all creditors had been barred, including his own, when he procured a dispensation in his favor that would enable him to obtain his pay in full out of assets equitably belonging to others. Under any construction ,of the assignment this would not be allowed, at least until all creditors had been notified of the changed condition of affairs and had been permitted to move to open the decree and come in upon the second or supplementary accounting. The honest and diligent creditor is favored by the law, but if the result sought for by the contestant in this proceeding is effected, the dishonest and negligent creditor would be favored. He would in effect be allowed to take advantage of his own wrong.
The motion to confirm the report of the referee is denied, with costs, and this proceeding is dismissed but without prejudice to the right of any firm creditor to make such application as he may deem proper for the protection of his rights.