WILLIAM W. HURLBERT and others, Appellants, *v.* DELOS W. DEAN and others, Respondents.

*It seems* that where the assignment of the effects of a copartnership, for the benefit of creditors, prefers the creditors of the individual members of the firm, it is competent, in order to rebut the presumption of fraud, for those claiming under such assignment, and the *onus* is upon them, to show that there are no individual debts thus preferred.

Where the referee in such case reports as a conclusion of law the validity of such assignment, upon the ground that no facts have been disclosed showing the existence of such individual debts, his report will be set aside, such *negative* evidence being insufficient to overcome the presumption of fraud in such assignment.

*A. Becker*, for the appellants.

*J. E. Dewey*, for the respondents.

DAVIES, J. It is now insisted on by the respondents that the plaintiffs are not entitled to the relief claimed by their complaint, by reason that there is a defect of parties defendants. The action is brought by the plaintiffs, as judgment creditors of Loomis F. Dean and Enos S. Brown, upon the return of an execution unsatisfied, to set aside an assignment made by the judgment debtors to the defendants, Delos W. Dean and Harvey Strong. It is claimed that the judgment debtors should have been made parties defendants. This objection should have been taken by demurrer or answer, and if not so taken, the court is compelled to deem the same waived. (Code, § 148). It is also claimed that the judgment should be affirmed, on the ground that the report of the referee is not embraced in the case. The practice has been so long and well settled on this point, that there ought not now to be any misapprehension in regard to it. If there was no report of the referee in this case, containing his findings of fact and conclusions of law, for the reasons given in the case of *Ackley* v. *Dygert*, the judgment should be affirmed. But we have here the required report, and the only error is that it is printed in the wrong place. It should

have been inserted in the case, immediately after the testimony, and preceding the exceptions taken to it. As its location in the judgment roll is manifestly an inadvertence, we should, on application, allow it to be inserted in the case, in its proper place. We regard the proceedings, thus amended, in conformity with the injunctions of section 173 of the Code.

The simple question, therefore, presented on this appeal, is whether, upon the face of the assignment, there is any thing appearing which renders it void in law. It purports to transfer to the defendants all the joint and several property of the assignors, in trust, in the first place, to pay all notes, drafts or bills indorsed by the assignees, or either of them, made by the firm of Dean & Brown, the assignors, and by the firm of Dean, Brown & Strong, to which latter firm, that of Dean & Brown had succeeded, or made by any or either of the individuals of said firms. The partnership property of the firm of Dean & Brown is thus, in the first place, to be appropriated as well to relieve the sureties and indorsers of the firm, as those of the individual members of the firm, and also all liabilities incurred on account of Strong, a former partner of the firm of Dean, Brown & Strong. This brings this case directly within the principle decided by this court in *Wilson* v. *Robertson* (21 N. Y., 587).

We there said that "it seems very plain that the insertion of such a provision in an assignment of the partnership effects of an insolvent firm is a violation of the statute in respect to fraudulent conveyances, and furnishes conclusive evidence of a fraudulent intent on the part of the assignors. Its operation was not only to hinder and delay the plaintiffs, as creditors of the firm, but, if successful, to cheat them out of their entire demand. It was very pertinently said that the firm is not liable for the private debts of one of its members, nor is there any liability resting upon the other members in respect of these debts. An appropriation of the firm property to pay the individual debt of one of the partners is, in effect, a gift from the firm to the partner, a reservation for the benefit of such partner or his creditors to the direct injury of the .

firm creditors.    Such assignment and appropriation were held to be a direct fraud upon the joint creditors of the assignors."

The same ground was taken by the Supreme Court, to uphold the assignment in that case, as is taken by the referee and the Supreme Court to maintain the assignment in this case, namely: that the provision violated no statute, but only a principle of the common law, which gives partnership creditors a preference in payment out of partnership property over the individual creditors of the several partners. Hence, it did not invalidate the whole assignment by rendering it fraudulent and void.    Being inequitable in reference to the partnership creditors, and an infringement of their rights, the provision was an illegal one; but not being fraudulent, it did not vitiate any other part of the assignments. These views were repudiated by this court in *Wilson* v. *Robertson* (*supra*), and it was held that this provision showed a fraudulent intent on the part of the assignors, which rendered the assignment wholly fraudulent and void.    The referee before whom the action was tried, found that it was not proven that there were any individual debts of the several partners, or of Horatio G. Strong, of the character mentioned in the assignment.    It was not incumbent on the plaintiffs to show that there were any such debts.    The appropriation of the partnership assets to the payment of the individual debts of the several partners, showed such a fraudulent intent on the part of the assignors, as to vitiate the assignment and render it fraudulent and void.    It is not relieved from this taint by the absence of any proof that there were debts of the character mentioned.    The referee and the Supreme Court should have held that the assignment was fraudulent and void upon its face.    The judgment appealed from should therefore be reversed, and a new trial ordered, with costs to abide the event.

BROWN, J.    In 1848 James F. Dean and Enos S. Brown became copartners in trade and business at Oneonta, county of Otsego.    For a part of the time the firm name was E. S.

Brown & Co., and for the residue of the time Dean & Brown. In March, 1855, the firm made a verbal agreement with Horatio G. Strong, whereby he was to become copartner with them upon paying them one-third of the value of their goods and assets, valued at $9,461.15. Strong was debited on the ledger by Brown with one-third of that sum and credited with $140 due him for services. Afterwards, in the spring of the same year, Strong and Dean purchased goods in the city of New York on credit from the plaintiffs in this action, in the name of the new firm of Dean, Brown & Strong. In the summer of the same year, Strong found himself unable to pay for his share of the copartnership effects as he alleged, and the verbal agreement that he should become a partner was abandoned, and the firm of Dean, Brown & Strong ceased to exist. From that time, the latter took no part in the business, and put nothing into the capital of the firm and took nothing out. Dean & Brown, in October of the same year, agreed to sell out the concern to Stephen S. Westcott and Horatio G. Strong, upon certain conditions, which were not fulfilled by Dean & Brown, and thereupon the agreement to sell was not consummated. At the time of such last mentioned agreement, Strong, in part performance thereof, gave to Dean & Brown his note for $1,000, payable at the Bank of Cooperstown, indorsed by Harvey Strong and William A. Strong, and he also paid them $100 in cash borrowed from his father, Chauncey Strong. Dean & Brown indorsed the note, and had it discounted, and received the proceeds thereof. When the agreement was abandoned, Chauncey Strong agreed to pay the said $1,000 note for Dean & Strong, upon being secured therefor by their mortgage on the store of goods at Oneonta. The mortgage was given and the note paid by Chauncey Strong.

On the 5th of November, 1855, James F. Dean and Enos S. Brown made an assignment by deed duly executed to the defendants, Delos W. Dean and Harvey Strong, of all their real and personal estate, in trust for the payment of debts, giving preferences. The firm of Dean & Brown, as also the firm of Dean, Brown & Strong were insolvent at this time,

and unable to pay their debts. Amongst the trusts of the said deed of assignment is one in the following words: Out of the net proceeds of the trust property, the assignees are directed "first to pay and discharge in full all notes, debts and bills of exchange made by the firm of Dean & Brown, or by the firm of Dean, Brown & Strong, or by any or either of the individuals of the said firms, which notes, debts or bills have been indorsed by Delos W. Dean and Harvey Strong, or by either of them, so that the said indorsers shall be fully discharged from all liability as indorsers or surety. Also all notes and drafts, if any, that have been signed by said Delos W. Dean and Harvey Strong." These facts were found by the referee, and are sufficiently stated to present the questions involved. He also found, as a fact, that the deed of assignment was made in good faith and without any intent to hinder and delay creditors, etc. The plaintiffs are judgment creditors with executions returned unsatisfied. Two of the judgments being against the firm of Dean, Brown & Strong, and the other against Dean & Brown. The complaint prays that the deed of assignment may be adjudged fraudulent and void, and that the plaintiffs may be paid their several judgments out of the assigned property, etc. The referee made a report in favor of the defendants, that the complaint be dismissed with costs to the defendants. Upon the report, judgment was entered, which was afterward affirmed at the General Term of the Supreme Court for the sixth district, and thereupon the plaintiffs appealed to this court. The connection of Horatio G. Strong with the firm, and the change of the firm name to that of Dean, Brown & Strong, can have no sensible effect upon the questions brought up for consideration here, and may therefore be dismissed without further notice. Strong became liable as a copartner for the debt contracted during the brief period of his connection with the business. The questions we are to consider, however, still remain the same. The same may be said of the subsequent agreement by which Strong and Stephen S. Westcott were to become the purchasers of the property and effects of the firm. Never having been

executed, it seems to be of no moment in the present controversy.

The plaintiffs claim that the provision in the deed of assignment which provides for the payment of the individual debts of the members of the firm, out of the assigned property, in preference to the debts of the firm, renders the deed fraudulent and void as against the firm creditors. No one will now claim that such a provision in such an instrument is legal, but whether its presence has the effect to vitiate the whole transaction, seems, until lately, to have been the subject of some doubt. The late chancellor had occasion to consider the subject in the case of *Kirby* v. *Schoonmaker* (3 Barb. Ch., 46). Schoonmaker and Gasharie had been copartners in trade, and made an assignment for the payment of their debts. The deed provided for the payment of $900 to Schoonmaker's mother out of his joint or separate portion of the proceeds of the assigned property, $550 of which was his separate debt and the residue the debt of the firm. It also provided for the payment, out of Gasharie's joint or separate portion of such proceeds, of $600 to his mother, which was his separate debt. These debts had a preference over all the creditors of the firm, except one for $500, which was directed to be first paid. The bill was filed by a judgment creditor. It alleged no fraud, nor did it appear that the partners were insolvent. The bill was dismissed upon this ground alone, for upon no other ground can the decision be sustained consistent with the case of *Wilson* v. *Robertson* (21 N. Y., 587). The chancellor, in his opinion, saying, "If the giving a preference to the individual creditors, or placing them upon an equality with the creditors of the firm, is merely inequitable in reference to a portion of the individual debts, but is not fraudulent, the bill should be filed in behalf of the complainants and the other creditors of the copartnership having a common interest with them." He did afterward · proceed to consider, to some extent, whether the presence of such a provision in a deed of assignment rendered it fraudulent and void, so as to authorize ·a firm creditor to file a bill, for his own benefit, to set aside

the assignment as void.    But he overlooked, or did not attach any importance to, the fact which, in my judgment, is fatal to this class of assignments, that the property of one of the copartners is appropriated to the payment of debts which he does not owe.

In the case referred to, the separate debt of Schoonmaker, due to his mother, was not the debt of the firm, nor was it the debt of his copartner, Gasharie.    And so it was apparent that the property of the latter—that is, his interest in the property and effects of the firm—was, by the deed of assignment, appropriated to pay a debt which he did not owe, in preference to the debts of the firm of which he was a member, which he did owe, and was under legal obligation to pay. These deeds of assignment giving preferences, are tolerated and upheld by the courts when they devote the entire property of the assignor to the payment of his debts.    If the deed reserves any thing to the assignor himself, or to the members of his family or to any one else except his creditors, it becomes absolutely void as to his creditors.    When the firm debts are paid, if the partner has none of his own, he may devote what may be left to him to pay the individual debts of his copartner.    But he can no more devote it to that purpose in preference to the payment of what he owes individually or jointly as a member of the firm than he can reserve it to himself, leaving the firm debts unpaid.    This is upon the obvious rule that the property of the debtor equitably belongs to his creditors to the extent of the payment of their debts.    The relations which the copartners maintain to the property of the firm entitle them sometimes, but not always, to have all its property in the first place applied to pay the copartnership debts.    And so the Court of Chancery, when it obtains jurisdiction over a copartnership fund through the bankrupt laws, or upon the dissolution of the firm through the death of one of the copartners, will observe this rule of equity and make distribution by applying the proceeds of the copartnership property, in the first place, to the payment of the firm debts, and the proceeds of the property of the individual partners to the payment of their individual debts before applying

it to pay the debts of the firm. All this, however, has little to do with our present inquiry, which is simply to determine whether a deed of assignment made by a firm, and which provides for the payment of the individual debts of one of the copartners, and for which the others are not liable in preference to the debts of the firm, can be upheld as a valid assignment and a legal disposition of the firm property as against the firm creditors. The converse of the proposition will not be disputed. For as there is no rule of equity which gives to the creditors of the individual members of the firm a lien upon their individual property while it is still within their control, there can be no legal objection to an assignment of it in trust to pay copartnership debts in preference to debts due from them individually, for both classes of debts are the debts of the assignors, which they are under a legal obligation to pay. The case of *Wilson* v. *Robinson* (*supra*) decides the question we are considering, and holds that the provision to pay the individual debts out of the firm property, in preference to the debts of the firm, renders the deed void, as egainst the firm creditors.

The referee has, however, found a fact in the case which may relieve the transaction from the imputation of fraud, and eliminate from the deed the force of the obnoxious provision. He finds that the defendants have paid no notes, drafts, bills of exchange or debts of the individual members of the firm of Dean & Brown or of the firm of Dean, Brown & Strong, or of either of them, or for the payment of which either of them were separately liable as surety. And that the proofs do not disclose that there were and are any such notes, drafts, bills of exchange or debts for which they, or either of them, are liable as indorser or surety. In the absence of this proof, he infers that no such debts existed at the time of the execution of the deed of assignment. He therefore finds, as one of his conclusions of law, that the presence of this obnoxious clause in the deed is simply nugatory, and the deed is the same in all respects as if the clause had been omitted. I am inclined to concur in this conclusion. Errors may occur in the preparation and execution of instruments of this charac-

ter, which would be corrected in the proper proceeding to reform the deed. If the reformation can, in effect, be made, and the error corrected by the concurrence of all the parties in interest, at the proper time, without the interposition of the court, I see no objection to it. And so, as in the present case, if there are no such debts as those referred to in the provision to which the plaintiffs take exception, it consists entirely with justice and equity to the parties concerned to treat the deed as if it had been omitted and not found among its provisions.

The judgment of the General Term should be affirmed.

The other judges were of opinion that, if it had been proved and found that no individual debts of the copartners existed, the assignment would not have been void on account of the provisions as to such debts in the instrument; but they thought that the *onus* of showing the non-existence of such debts rested on the parties claiming under the assignment to establish that there were no such debts, and that the finding that the evidence did not show the existence of such debts was not sufficient.

Judgment reversed.