AMOS TURNER, Assignee of NORMAN and DAVID C. PULVER, Respondent *v.* JOHN M. JAYCOX, JOHN A. GREEN, Jr., THOMAS D. GREEN, and JAMES A. JAYCOX, Appellants.

A general assignment for the benefit of creditors assigning " all goods, chattels, merchandise, bills, bonds, notes, book accounts, claims, demands, choses in action, judgments, evidences of debt, and property of every name and nature whatsoever " (of the assignor), "more particularly enumerated and described in the schedule hereto annexed," covers all personal property of the assignor, though none was enumerated or described in the specified schedule.

A false or erroneous addition in an instrument of transfer will not be construed to defeat or vitiate the operation of a previous clause fully and sufficiently describing the property intended to be transferred.

It is no objection to the validity of a partnership assignment for creditors that it prefers, over other partnership debts, debts not originally contracted by the firm, but which they had subsequently, for a good consideration, agreed to or become liable to pay.

A joint note given by partners as individuals, for money used in the partnership business, does not create a partnership debt. (DANIELS, J. *contra.*)

(Argued April 3d, 1869, and decided June 14th, 1869.)

APPEAL from judgment of the General Term in the seventh district, affirming judgment below for the plaintiff. The opinion of the court sufficiently states the facts.

*J. C. Hunt,* for appellants.

*T. R. Strong,* for respondent.

DANIELS, J.   This action was brought to recover the value of goods and merchandise seized under an attachment and afterwards sold upon execution, in an action brought by the defendants, as creditors, of the firm of N. Pulver & Co., which had previously been engaged in business at Palmyra, in Wayne county.   The firm became insolvent, and on the 4th day of April, 1861, they made and delivered a general assignment to the plaintiff, for the benefit of their creditors. The property in controversy was attached on the 20th day of April, 1861.   Judgment was recovered in the action in which the seizure was made on the 11th of May following, and the property was sold under the execution on the 20th day of that month.

Upon the trial of the action it was claimed by the defendants that the personal property seized and sold by them was not included in the assignment because no account of it was contained in the schedule annexed to it.   The court ruled otherwise, and the defendants excepted.   By the terms of the assignment it was stated in the recital which it contained, that the assignors were desirous of making a fair and equi-

table distribution of their property and effects among their creditors. And that was followed by a broad and comprehensive grant and transfer of " all and singular the lands, tenements and hereditaments, situate, lying and being in the State of New York, and all the goods, chattels, merchandise, bills, bonds, notes, book accounts, claims demands, choses in action, judgments, evidences of debt, and property of every name and nature whatsoever, of the said parties of the first part, more particularly enumerated and described in the schedule hereto annexed, marked schedule A." In the declaration of trust contained in the assignment, it was declared that the assignee should take possession of all and singular the lands, tenements, hereditaments, property and effects thereby assigned, and sell and dispose of the same, and collect all and singular of the debts, &c., as should prove to be collectable.

The schedule referred to in the clause following the granting portion of the assignment, contained a reference to and a description of two pieces of land then owned by the assignors, and an account of the debts owing to them. No allusion was made in it to the tangible personal property owned by the firm. But that was not necessary for the purpose of transferring the title to that species of property to the assignee. The terms made use of in the body of the assignment were of so definite a character as clearly to indicate it to have been the intention of the assignors that this property should pass by the assignment. For the words goods, chattels and merchandise, were entirely inapplicable to any thing else that the assignment could by any possibility operate upon. Other appropriate words were made use of for the purpose of describing the real estate, debts, accounts, and other choses in action, and exhibiting it to be the intention of the assignors to grant and assign all of that property owned by them to the assignee. The words "goods, chattels and merchandise " could have no pertinency to the sale or assignment of real estate and choses in action, and if they did not include the property in controversy, they would be without any meaning

.or signification whatever in the assignment. And so, also, would the term "effects," contained in the subsequent part of the assignment, designating what the assignee was to take possession of. For it was very manifestly used to distinguish something that was not intended to be understood as being included in the terms, lands, tenements, and hereditaments, or debts, dues, bills, bonds, notes, &c. That term, together with the preceding word, "property," in the connection in which it was made use of, was intended to include something not comprehended by the previous or following members of the sentence. For it stood in contrast with them, as descriptive of something beyond the subjects to which they plainly referred. In the connection in which it was used, it was designed to include what had previously been expressed by the words, "goods, chattels, and merchandise," for there was nothing else that it could properly comprehend, and it was well selected for the expression of that purpose. The concluding words of the grant also exhibit it to have been the purpose of the assignors to transfer this personal property to the assignee. For after describing the different kinds of property intended to be transferred, it was declared that the assignment should transfer "property of every name and nature whatsoever, of the parties of the first part."

The terms used which were neither apposite nor appropriate to the other property assigned, clearly evinced the intention that the goods and merchandise of the assignors should pass under them to the assignee. And the general purpose and object of the assignment confirmed this conclusion.

The case, therefore, was brought within the principle of construction prohibiting a false or erroneous addition from vitiating what had been previously sufficiently and fully described as a portion of the subject matter intended to be transferred by the instrument. (*Monell* v. *Fisher*, 4 Welsby, Hurlstone & Gordon's, Exch'r Repts., 591, 604; *Connolly* v. *Vernon*, 5 East., 51, 80.) And it was substantially within the ruling of this court, as it was declared in deciding the case of *Platt* v. *Lott* (17 N. Y.; 478).

Hand — Vol. I.     60

When the evidence was closed, the defendants moved for a nonsuit, for the reason that certain debts were unlawfully contained in the first class of preferred creditors mentioned in the assignment, that it was claimed should have been postponed until after the ordinary partnership liabilities had been discharged. The same objection was afterwards presented in various forms by means of exceptions taken to the refusal of the court to change certain legal propositions raised on the part of the defendants. It will not be necessary to examine these propositions in detail. For they arose upon the uncontroverted facts of the case, and if the defendants were right upon either of them, the plaintiff should have been nonsuited by the court.

The first of the debts claimed to have been fraudulently preferred and provided for in the assignment, was the sum of $550 owed by the preceding firm of Pulver & Garlock to Elizabeth Pulver. It appeared by the evidence of the assignors, who were called and examined as witnesses on the part of the defendants, that the firm of Pulver & Co. bought out the stock in trade of Pulver & Garlock. And as a part of the consideration of the purchase, the former assumed and agreed to pay the debts then owing by the latter firm, and that this was one of those debts. This was conclusively proved to have been the agreement, because no evidence was given controverting the statements of the defendants' witnesses upon the subject. And that rendered this debt as completely the debt of Pulver & Co., as it would have been if that firm had actually received the money by the loan of which it was originally created. (*Williams* v. *Shelly*, 37 N. Y., 375.) From the time it was so assumed, Pulver & Co. became primarily bound for its payment.

The next debt claimed by the defendants to have been unlawfully provided for by the assignment of the partnership property was a note given to Hannah Sackett for the sum of $372.45. This was for money loaned by her to Norman Pulver's father, in his lifetime. After his death, Norman became the administrator of his estate, and had the

money in his hands, in that capacity, for the payment of the debt. She did not want the money; and the partners used it in the business of the firm, and gave their note for it. There was some uncertainty, under the evidence, whether the note was given in the firm name or signed by its members individually. It was of no practical importance which was correct; for the use of the money by the partners in the business of the firm, followed by their joint note to the creditor for its payment, rendered it as much a partnership debt as any of the others which were contracted in the course of its business.

A note given to Charles W. Hine was preferred in the same class. This note was in part given for the board of the different members of the firm. It was dated on the 20th of March, 1861, fifteen days before the assignment was made; and it included the board of Norman Pulver for two years, and of David Pulver for one year and six months. Norman Pulver testified that it was understood at the time he and his brother went in together, "if either owed any debts it was to be paid out of the common property." And David testified that "there was an agreement at the time the partnership was formed that whatever each partner owed should be paid from the common fund."

This agreement rendered the debts due to Hine a liability of the co-partnership, and consequently a sufficient consideration for the note which was given by the firm to him. There was, therefore, no legal objection existing to its preference in the assignment as one of the partnership debts.

The next objection to the legal validity of the assignment depended upon that portion of it which directed the assignee to pay the individual debts of the members of the firm out of the surplus remaining after the partnership debts should be discharged. If this created a presumption of a fraudulent intent in the assignors, arising out of this provision, it was not conclusive upon that subject. It was one which could be removed by evidence.

For the purpose of overcoming it, each of the assignors

testified that he owed no individual debts, and owned no individual property. And this was sufficient to rebut the presumption of a fraudulent intent, arising out of this provision in the assignment. It brought the case directly within the conclusion declared by this court in the decision of the case of *Hurlbut* v. *Dean* (2 Keyes, 97, 105).

As no other exceptions were taken to the plaintiff's right to recover, the judgment should be affirmed.

All concur.

All the judges concurred in the opinion of Daniels, J., except as to the proposition therein stated, to the effect that a joint note of individual partners is a partnership debt. This was disapproved by a majority of the court.

Judgment affirmed.