J. D. KURTZ CROOK, Respondent, *v.* LEOPOLD RINDSKOPF et al., Appellants.

It is lawful for an insolvent member of a firm to devote his individual property to the payment of firm debts or to any debt owing by him to

his partners to the exclusion of his individual creditors, and no inference of fraud can legally be derived from such disposition.

The same rules should be applied in the construction of assignments for the benefit of creditors as are applicable to the interpretation of other contracts, they are to be fairly and reasonably construed, with a view of carrying out the intent of the parties making them.

Where, therefore, an interpretation may be given to the assignment, consistent with innocence and the general rules of law, it should be given in preference to one which would impute a fraudulent intent to the assignor, or defeat the general purpose and intent of the conveyance, and where authority to do an act is conferred in general terms, it will be deemed to be and to have been intended to be exercised within the limits prescribed by law.

The members of a firm executed an assignment for the benefit of credi tors of all their property, which provided that after the payment of the copartnership debts in the order specified, any residue should be applied to the payment of the individual and private debts of the assignors or either of them. If the remainder should prove insufficient for that purpose, then the same was directed to be applied *pro rata* to the payment of said debts   In an action brought by a firm creditor to set aside the assignment on the ground of fraud, it appeared that one member of the firm owned individual assets of the value of $30, the other of the value of $10, their individual indebtedness was also unequal in amount.   No fraud, in fact, was shown, but it was sought to be inferred from the provision in regard to the payment of indi vidual debts in connection with the evidence showing inequality in individual assets and indebtedness   *Held*, that no such inference could properly be drawn, that no authority was given to the assignee by either member of the firm, or could properly be inferred to satisfy the individual debts of the other from the combined individual property; but that a fair construction of the instrument was that after payment of firm debts, if there was a surplus, the share of each partner therein should be applied in payment of his individual debts  that while the instrument was necessarily the joint act of the members of the firm, so far as their joint property was concerned, it was the individual act of each, when dealing with his individual property, and the language used should be construed as referring to and expressing only their individual wishes with reference to their individual property and liabilities

Also, *held*, that the provision complained of could not, in any event, have been intended to defraud the creditors of the firm, and until aggrieved plaintiff had no cause of action

*Crook* v  *Rindskopf* (34 Hun, 457) reversed

(Argued March 24, 1887, decided April 26, 1887 )

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made October 15, 1884, which reversed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 34 Hun, 457.)

This action was brought by plaintiff, as a judgment-creditor of the firm of Rindskopf & Rosenthal, to set aside an assignment by the members of that firm for the benefit of creditors on the ground of fraud.

The material facts are stated in the opinion.

*Adolph L. Sanger* for appellants. As the provision in the assignment providing for distribution among the creditors of the individual partners, after the payment of all the partner-ship creditors is to plaintiff's advantage, he has no standing in court. (*Fox* v. *Heath,* 16 Abb. Pr., 168; *Scott* v. *Guthrie,* 10 Bosw. 408; 25 How. Pr. 481; *Bogert* v. *Haight,* 9 Paige, 297; *Cox* v. *Platt,* 32 Barb. 127, 130; *Morrison* v. *Atwell,* 9 Bosw. 503, 509; *Richardson* v. *Herron,* 39 Hun, 537; *Royer Wheel Co.* v. *Fielding,* 101 N. Y. 510; *Leitch* v. *Hollister,* 4 id. 211; *Collomb* v. *Caldwell,* 16 id. 484.) The fact that there is a provision in an assignment executed by partners for the payment of the private and individual debts of the assignors out of the residue remaining after the payment of all the partnership debts, furnishes no evidence of an intention to hinder, delay or defraud creditors, and the legal intendments are all in favor of the validity of assignments in trust for the benefit of creditors. (*Turner* v. *Jaycox,* 40 Barb. 164; 40 N. Y. 470; *Eyre* v. *Beebe,* 28 How 333, 340; *Friend* v. *Michaelis,* 15 Abb. [N. C.] 336; *Cox* v. *Platt,* 32 Barb. 127, 130; *Bogert* v. *Haight,* 9 Paige, 267; *Morrison* v. *Atwell,* 9 Bosw. 503; 40 N. Y. 470; *Fox* v. *Heath,* 16 Abb. 168; *Scott* v. *Guthrie,* 10 Bosw. 480; *Richardson* v. *Herron,* 39 Hun, 540; *Royer Wheel Co.* v. *Fielding,* 101 N. Y. 510; *Smith* v. *Howard,* 20 How. 121; Bishop on Insolv. Debtors, 169.)

*Edward T. Bartlett* for respondent. The provision of the assignment as to the payment of the individual debts

of the assignors out of the residue of the assigned property rendered the assignment void. (*O'Neil* v. *Salmon*, 25 How. 246, 249, 253, 254; *Smith* v. *Howard*, 20 id. 121; *Leitch* v. *Hollister*, 4 N. Y. 215; *Talcott* v. *Hess*, 31 Hun, 282.) The fact, if proved, that after the payment of partnership debts, as directed by the assignment, there will remain no assets to be paid to or credited to the assignors, is no defense to this action. (*O'Neil* v. *Salmon*, 25 How. 246; *Smith* v. *Howard*, 20 id. 127, 128; *Goodrich* v. *Downs*, 6 Hill, 438; *Barney* v. *Griffin*, 2 N. Y. 365; *Collomb* v. *Caldwell*, 16 id. 485.) An assignment by an insolvent is void for actual fraud, if while he provides for only a part of his creditors, he makes the attempt in the instrument to reserve any portion of the fund to himself. (*O'Neil* v. *Salmon*, 25 How. 253; *Collomb* v. *Caldwell*, 16 N. Y. 485; *Leitch* v. *Hollister*, 4 id. 211; *Kirby* v. *Schoonmaker*, 3 Barb. Ch. 46; *Smith* v. *Howard*, 20 How. 121; *Wilson* v. *Robertson*, 21 N. Y. 587.) An assignment void in fact for fraud is void *in toto*. The "fraud taints and vitiates the whole." (*Hyslop* v. *Clark*, 14 Johns. 458; *Mackie* v. *Cairns*, 5 Cow. 547; *Grover* v. *Wakeman*, 4 Paige, 23; 11 Wend. 187; *Rogers* v. *De Forest*, 7 Paige, 277; *Barney* v. *Griffin*, 2 N. Y. 365; *Goodrich* v. *Downs*, 6 Hill, 438; *Coleman* v. *Burr*, 93 N. Y. 31.) The assignment was void for palpable, actual fraud. (*Curtis* v. *Leavitt*, 15 N. Y. 116; *Scott* v. *Guthrie*, 10 Bosw. 427.) The schedules are part of the assignment. (General Assignment Act, 1877, § 3; *Terry* v. *Butler*, 43 Barb. 398; *Kavanah* v *Beckwith*, 44 id 197; *Turner* v. *Jaycox*, 40 N. Y. 475, 476; *Hurlburt* v. *Dean*, 2 Keyes, 97–105.)

RUGER, Ch. J. On the 23d of October, 1882, Leopold Rindskopf and Meyer Rosenthal, composing the firm of Rindskopf & Rosenthal, executed an assignment of all their property, both real and personal, in trust to Abraham Rosenthal to convert the same into money, and after paying the lawful expenses of the trust to pay their partnership debts in the order specified in the instrument. It then provided "that

with the remainder and residue of said net proceeds and avails, if any there shall be, the party of the second part shall pay and discharge all the individual and private debts of the parties of the first part, or either of them, whether due or to become due, providing such remainder shall be sufficient for that purpose; and if insufficient then the same shall be applied *pro rata*, share and share alike, to the payment of said debts, and according to their respective amounts." It was further provided that if there was any surplus then remaining, it should be repaid to the said assignors, or to their executors, administrators or assigns.

The proof established the facts that the assigned estate amounted in value to the sum of $9,360.87, and the firm indebtedness to $14,667.87, and that the individual assets of the members of the firm amounted to forty dollars, of which Rindskopf owned ten dollars, and Rosenthal thirty dollars. Rindskopf's absolute individual liabilities amounted to $300, and his contingent liabilities to $4,300; and Rosen-thal's absolute individual liabilities to $2,850.

The plaintiff being a judgment creditor of the firm, brought this action to set aside the assignment, upon the ground that it was made with intent to hinder, delay and defraud the creditors of said assignors, and to have the assets of the assigned estate applied to the payment of his debt. Both the assignors and assignee respectively appeared, and answered in the action, and the assignee denied all of the allegations contained in the complaint imputing fraud to the assignors, which put the plaintiff to the proof of his case. No attempt was made on the trial to show any fraud in the assignment, except such as was sought to be inferred, from the provision relating to the payment of individual debts.

The trial court found that there was no fraud in fact in the making of the assignment, and, as a conclusion of law that the instrument constituted a valid transfer of the property of the assignors to their assignee, and ordered judgment dis-missing the complaint. Upon appeal, the General Term reversed the judgment, and ordered a new trial. As that court

did not assume to reverse the judgment upon the facts, its order can now be sustained only upon the theory that the undisputed evidence furnished conclusive proof of fraudulent intent on the part of the assignors in making their assignment. The conclusion of that court was based wholly upon the ground that the clause of the assignment, providing for the payment of the individual creditors of the respective assignors, considered in connection with the fact of inequality in the amount of individual indebtedness, of the value of individual assets, and of the amount of the respective accounts of the individual members with the partnership firm, operated as a fraud in law, upon the individual creditors of the partner, having the largest individual estate, and afforded conclusive evidence of a fraudulent intent on the part of the assignors, rendering the assignment wholly void.

Passing over the questions, whether an intended fraud by one member of a firm in transferring his individual assets, avoids an assignment of the firm assets, made by the firm, and whether such a fraud, affecting a distinct portion of the assets devoted to a special class, is inseparable, and must, as matter of law, be held to vitiate the entire trust, we will consider the case upon the theory discussed by the court below. The burden was upon the plaintiff to show affirmatively that the enforcement of the provisions of the assignment, would necessarily work a fraud upon the creditors of the assignors, and that it could not legally be carried out without producing such a result.

It nas, in some cases, been held that assignors providing in their assignment for an illegal disposition of property, are not at liberty, in an action to set it aside, to show, as proof of innocence of fraudulent intent, that the assigned fund was insufficient to satisfy the prior valid provisions of the assignment, and could not, therefore, be affected by the alleged illegal provision, and are estopped from controverting the existence of the conditions which they had provided for. (*Collomb* v. *Caldwell*, 16 N. Y. 484, and cases there cited.)

It has, however, been held that it may be shown in rebuttal of an inference of fraudulent intent, arising from provisions for the payment of individual debts, that there were, in fact, no such debts or individual assets to be affected by such provision (*Turner* v. *Jaycox*, 40 N. Y. 470; *Bogert* v. *Haight*, 9 Paige, 297), or that the property formerly belonging to the firm had become the property by purchase of the one making the assignment (*Dimon* v. *Hazard*, 32 N. Y. 65, 68), and other circumstances showing that no fraud, in fact, was intended. (*Dimon* v *Hazard*, *supra; Hurlbert* v. *Dean*, 2 Keyes, 97.)

The principle that a party may be inquired of as to his intent in doing an act, where such intent is material, tends strongly to confirm the proposition that the presumption of fraud arising from the provisions of an assignment may be repelled by parol evidence. (*Seymour* v. *Wilson*, 14 N. Y. 567; *Hunt* v. *Johnson*, 44 N. Y. 27.)

The plaintiff in this case anticipating the probable defense, did not rely upon the presumptions of fraud, arising from the assignment alone but undertook to establish the fact affirmatively, that in the actual circumstances of this case, the execution of the provision in question would necessarily operate as a fraud upon creditors. It is unnecessary therefore to assail the doctrines annunciated in *Collomb* v. *Caldwelt* (16 N. Y. 484); *Barney* v. *Griffin* (2 id. 365); *Goodrich* v. *Downs* (6 Hill, 438), and similar cases, for conceding them to the fullest extent claimed, the facts of this case do not bring it within their operation.

It is lawful for an insolvent member of a firm, to devote his individual property to the payment of firm debts, to the exclusion of his individual creditors. (*Hazard* v. *Dimon*, 32 N. Y. 65; *Saunders* v. *Reilley*, 105 id. 12; *Royer Wheel Co.* v. *Fielding*, 101 id. 504; *Kirby* v. *Schoonmaker*, 3 Barb. Ch. 46.) And it follows from the same principle that he may also apply it, to the payment of any debt owing by him, to his partners in the firm, and no inference of fraud can legally be derived from such disposition, of his individual property. This case was decided by the General Term, as appears from

their opinion, solely upon the ground of a fraud, alleged
to have been intended by Rosenthal, upon his individual
creditors. The argument of the respondent is, in brief, that
Rosenthal having twenty dollars more individual property
than Rindskopf, the law will assume that he, by placing that
sum in a common fund with other individual assets, and direct-
ing the payment of their aggregate individual indebtedness
therefrom, intended to commit a fraud upon his individual
creditors, because, it is said, if the excess of Rosenthal's indi-
vidual assets is distributed *pro rata*, among each and all of the
individual creditors of both parties, according to the amount
of their respective claims, that Rindskopf's creditors will
necessarily receive something to which Rosenthal's creditors
were equitably entitled.

We think this argument, upon the facts of the case, is
defective in several particulars. It is not at all certain that
such a result would follow in this case, for if Rindskopf's
contingent liabilities never became fixed, there would be only
$300 of his individual debts, to be paid as against $2,850 of
Rosenthal's, and in that event private property of Rindskopf
would in fact be taken to pay Rosenthal's individual debts.

We also think the result claimed does not follow from the
premises assumed by the court below, but that it would
necessarily be produced only, by the existence of exact equality
of interest in the firm assets by both members, or a greater
interest in Rosenthal, combined with equality in individual
indebtedness, and inequality in the individual property. If
there is simply inequality of interest in the firm assets, and
inequality in individual assets, one inequality could be easily
compensated by a corresponding inequality in the other, and
the evidence does not show but that this state of things in
fact existed. It does appear that the assignors were equal
partners in their firm business, but there is no evidence as to
the amount they each originally contributed to the capital
of the firm, except that the amounts were about equal.
Neither does it appear how much they had, respectively,
drawn from the firm, except that the amounts were nearly

equal. As the witness says one might have contributed "a little more or a little less than the other." No statement of accounts between the respective partners has been given showing their liabilities to the firm, or the amount of their respective interests in its assets, and for aught that appears in the case Rosenthal might, on a settlement of the partnership accounts, have owed Rindskopf the exact sum which it is claimed he diverted from his individual assets to the payment of Rindskopf's creditors. This, in the absence of a fraudulent intent, he had a perfect right to do, as he could lawfully pay his debt to his partner in preference to that of any other creditor, if done in good faith; and if he did so in fact, it would relieve the clause in question from any criticism or objection. (*Royer Wheel Co.* v. *Fielding*, 101 N. Y. 504; *Dimon* v. *Hazard*, 32 id. 65.)

Assuming that there was a surplus remaining after the payment of firm debts, the assignment ostensibly required this residue of $40 to be put into a common fund for the payment of the individual debts of both assignors, and then if Rindskopf's contingent liability became fixed, it is evident that about $15 of his assets would be paid to Rosenthal's individual creditors, leaving $15 only subject to be diverted from them to the payment of Rindskopf's creditors. The insignificance of this sum, as compared with the amount of individual debts to be paid, and the almost infinitesimal amount of any dividend to individual creditors would seem to furnish a conclusive answer, to the presumption of fraud sought to be drawn from the obviously tentative provision in question. It would also seem, in view of the large amount of property transferred and the trivial value of that which might be improperly paid out, that the maxim "*De minimus non curat lex*" might well have been applied and held to control the determination of the case. (*In re Empire City Bank*, 18 N. Y. 199; *Colman* v. *Shattuck*, 62 id. 363; *Ross* v. *Hardin*, 79 id. 84, 93.) We conclude, therefore, upon this branch of the case, that within the authorities cited below, every inference of fraud derivable from the provisions referred

to, was effectively rebutted.      (*Bogert* v. *Haight, supra
Turner* v. *Jaycox, supra ; Hazard* v. *Dimon, supra ; Huri-
bert* v. *Dean, supra.*)

We are also of the opinion that the provisions of this assign-
ment, if fairly construed and enforced according to their
natural meaning and import, would not occasion an illegal
disposition of the individual property of either assignor.
While heretofore there has been some diversity of opinion in
the courts in respect to the proper rule to be applied in the
construction of such instruments, we think the tendency of
modern decisions, especially those of most approved authority,
has been to adopt the same rules which obtain in the interpre-
tation of other contracts. (*Knapp* v. *McGowan*, 96 N. Y. 75,
87 ; *Rapalee* v. *Stewart*, 27 id. 310, 315 ; *Benedict* v.
*Huntington*, 32 id. 219 ; *Townsend* v. *Stearns*, id. 209.)
Among those rules is that requiring such an interpretation as
will render the instrument consistent with innocence, and the
general rules of law, in preference to such, as would impute a
fraudulent intent to the assignor, or defeat the general purpose
and intent of the conveyance. (*Bagley* v. *Bowe*, 105 N. Y. 171 ;
*Ginther* v. *Richmond*, 18 Hun, 232, 234 ; *Rapalee* v. *Stewart*,
27 N. Y. 315 ; *Benedict* v. *Huntington*, 32 id. 219 ; *Town-
send* v. *Stearns*, id. 209.)   Such transfers are sanctioned by
law and are, when made, like other contracts, to be fairly
and reasonably construed with a view of carrying out the
intentions of the parties making them.   When authority to
do an act is conferred in general terms it will be deemed to
be and to have been intended to be exercised within the
limits prescribed by law.  (*Kellogg* v. *Slauson*, 11 N. Y. 302.)
In such cases as in others, doubtful and ambiguous phrases
admitting of different meanings are, in accordance with the
maxim " *ut res magis valeat quam pereat*," to be so construed as
to authorize a lawful disposition of the property only, although
there may be general language in the instrument susceptible
of a different construction.  (*Townsend* v *Stearns, supra.*)

If the instrument in question be considered in the light of
these rules, we think it is not fairly subject to the criticism

which has been made upon it. The insolvency of the firm of Rindskopf & Rosenthal necessarily worked its dissolution and a division of the interests of its respective members, except so far as their property was already legally disposed of by the assignment. After satisfaction of the firm debts the law would restore each member of the firm to his legal rights in the residue of the property, subject only to the execution of the power conferred upon the assignee to dispose of the same.

It is essential to the argument of the respondents to establish that the language of this assignment, contains authority to the assignee, from each member of the firm, to satisfy the individual debts of the other, from the combined individual property. We do not think a proper construction of the instrument justifies the inference of such an authority; certainly no such power is expressly given, and it would be contrary to settled rules to impute such an intention to its authors, unless the language of the instrument expressly requires it. The law would require, in the event of an assignment by a firm of two persons, that after the payment of firm debts the residue should be divided into two funds for the payment of individual creditors, and the only defect, if any, in this assignment is, that it did not expressly recognize the possible existence of the two funds. We think the law will supply this omission and order a distribution of the fund according to the legal rights of the claimants upon it. It was plainly contemplated in the assignment itself that this division should be made in the eventual surplus, if any there was, for that is directed to be paid to the parties of the first part, their executors, administrators and assigns. This provision could be carried out only upon the assumption that a division of the residue had been made between the two assignors, and thus reflects strongly upon the intention of the conveyancer in the use of the language criticised. A reasonable construction of this provision would seem to require that the language should be distributively applied, and held to mean that each member of the firm transferred such part of the property as he had a lawful right to convey, and subjected the residue

of such part, to the payment of such debts as he was individually liable for. The assignment purported to deal with all of the property, and its fair import was to distribute it to those who were legally entitled to it, paying the firm creditors first, and then, in case there were assets applicable to that purpose, providing for the respective individual creditors of the members of the firm. There is no language in the clause in question which expressly forbids such a construction, or requires that the property of one, should be applied to the payment of the debts of the other, and its whole language would be satisfied by the distribution of the share of each, in payment of his individual debts.

Upon the satisfaction of the debts of the firm, it would be the legal duty of the assignee, even in the absence of any express provision requiring it, to determine the interest of the individual partners in the surplus, and devote each share to the interest of its respective owner in accordance with his legal rights. (*Eyre* v. *Beebe*, 28 How. 333 ; *Friend* v. *Michaelis*, 15 Abb. [N. C.] 354.)

While the instrument was necessarily the joint act of the members of the firm, so far as their joint property was concerned, it was the individual contract of the respective members, so far as they dealt with individual property. When providing for their joint interests and property, which constituted the main object of the assignment, they spoke their joint interest and purpose, but when dealing with their individual interests, although inaptly continuing the use of the phraseology applicable to its earlier provisions, their language must be construed as referring to and expressing only their individual wishes with reference to their individual property and liabilities. In case a surplus arose in the administration of this estate, and it became the subject of judicial controversy among the individual creditors of the members of the firm, it could not reasonably be said that there is anything in the language of the assignment which precluded Rosenthal or his creditors, from demanding that his individual property should be applied to the payment of his individual debts.

It may be finally said that the provision complained of could not in any event have been intended to defraud the creditors of the firm, and until they are aggrieved, they have no cause of action. (*Royer Wheel Co.* v. *Fielding*, 101 N. Y. 510; *Dimon* v. *Hazard, supra.*)

The order of the General Term should be reversed, and judgment of the Special Term affirmed.

All concur (ANDREWS, J., on the construction of the instrument) except DANFORTH, J., not voting.

Order reversed, and judgment affirmed.