(6 Misc. Rep. 462.)

In re FAY.

(Common Pleas of New York City and County, Special Term. January 24, 1894.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—RULE OF CONSTRUCTION.

An assignment will not be construed strictly against the preferred creditors, but will be construed impartially, according to the ordinary rules for the construction of contracts.

2. SAME—RIGHT OF PREFERRED CREDITORS—INTEREST.

An assignm.nt directed the assignee "to pay and discharge in full the following described indebtedness, [naming creditors and amounts,] and then to pay and discharge in full, if the residue of the proceeds is sufficient for that purpose, all the debts and liabilities now due or to grow due thereon." *Held,* that the preferred creditors were entitled to interest on their claims.

Proceedings for a final settlement of the accounts of James H. Fay, assignee for benefit of creditors of Marshall Lefferts, Herman Braun, and Joseph D. Taylor, partners under the firm name of Marshall Lefferts & Co.

James H. Fay, for assignee.
Wilson & Wallis, for opposing creditor.

BOOKSTAVER, J.   On March 1, 1887, Marshall Lefferts & Co. made an assignment for the benefit of their creditors, with preferences, expressed in the deed of assignment as follows:

"To pay and discharge in full the following described indebtedness of the assignors to the individuals hereinafter mentioned for the amounts specified in their order, as follows: First, to S. M. Fay, of New York city, $36,000; second, to L. G. Woodhouse, of New York city, $2,000; third, to Messrs. McKesson & Robbins, of New York city, $1,200; fourth, to Maria L. Taylor, of Jersey City, N. J., $1,400; fifth, to E. T. Day, of New York city, $1,000; sixth, to Paul Hoffman, Jr., of Brooklyn, N. Y., $400."

Thus far the instrument is in writing, and then follows the usual printed form:

"And then to pay and discharge in full, if the residue of such proceeds is sufficient for that purpose, all the debts and liabilities now due, or to grow due, from the said parties of the first part, with all interest, moneys due, or to grow due, thereon," etc.

The claims of the first four preferred creditors were paid in full, with interest up to the day of payment, and this exhausted the fund applicable to preferred debts, excepting a balance barely sufficient to cover the commissions of the assignee.   The fifth preferred creditor, E. T. Day, whose claim would have been paid in full had no interest been allowed on the four prior items, now receives nothing under the preference, and objects to the account on the ground that the allowance of interest by the assignee was unwarranted by the terms of the assignment as set forth above. Mr. Day's counsel contends that the words "for the amounts specified" were intended to limit the assignee to the payment of the sums named, especially as the words "with interest" are used immediately afterwards, where reference is made to the remaining and unpreferred liabilities, and that their use in the one place

precludes the presumption that the same meaning was intended in the case when they were not used. On behalf of the assignee it is urged that the words "the following described indebtedness" make all that follows, amounts as well as names and residences, mere description for the purpose of identifying the debts contemplated by the assignor. The determination of the question thus raised depends largely upon whether such an assignment is to be construed strictly against the preferred créditors, or impartially, and according to the general rules applicable to contracts. Many of the early decisions in this state regretted that the common-law principle of permitting an insolvent to give preferences should ever have been adopted, (Boardman v. Halliday, 10 Paige, 223, 229; Riggs v. Murray, 2 Johns. Ch. 565, 577, Kent, Ch.; Barney v. Griffin, 2 N. Y. 365, 371; Nicholson v. Leavitt, 6 N. Y. 510,) and more recently they have been regarded with toleration only, (Beste v. Burger, 13 Daly, 317, 325; Bank v. Schumann, 63 How. Pr. 476, 480.) Perhaps the eminent judges who were formerly so uncompromising in their attitude towards preferences would view the matter more favorably since the statute of 1887, (chapter 503,) which limits the amount subject to preference to one-third of the assigned property. But, however this may be, it is now well settled that the ordinary rules for the construction of contracts will be applied to assignments. In Crook v. Rindskopf, 105 N. Y. 476, 485, 12 N. E. 174, it was said: "While heretofore there has been some diversity of opinion in the courts in respect to the proper rule to be applied in the construction of such instruments, we think the tendency of modern decisions, especially those of most approved authority, has been to adopt the same rules which obtain in the interpretation of other contracts." Also in Knapp v. McGowen, 96 N. Y. 75, 87, the court said: "We are left, then, only with the question of the actual intent" of the assignor. See, also, Bagley v. Bowe, 105 N. Y. 187, 188, 11 N. E. 386; Townsend v. Stearns, 32 N. Y. 209. So, in the present case, it may be said: "We are left, then, only with the question of the actual intent" of the assignors, which, in accordance with a familiar principle, should be sought, not so much in the printed, as in the written, portion of the instrument, viz. the above-quoted direction to the assignee "to pay and discharge in full the following described indebtedness," etc. This last word is here used obviously in the sense of debts; that is, "all that is due to a man under any form of obligation or promise," (Burrill, Law Dict.,) or "that of which payment is liable to be exacted," (Webst. Dict.) The sole question, therefore, is what payments were due to, or could have been exacted by, the respective creditors at the time their several claims were discharged by the assignee? That they were in position to demand interest as well as principal is shown by the uncontradicted affidavit of the assignee that he had "paid interest on all preferred claims that have been paid from their maturity to the times of payment." Without the affidavit it would be presumed that the debt carried interest. Purdy v. Phillips, 11 N. Y. 406; Chester v. Jumel, 125 N. Y. 237, 26 N. E. 296. The assignee was consequently jus-

tified in making the payments as he did. By so doing he carried out the plain desire of his assignors that certain debts, represented by the principal sums named, should be paid in their order, and the debt was not paid so long as the element of interest entering into it was unpaid. People v. New York Co., 5 Cow. 331; Dana v. Fiedler, 12 N. Y. 40, 50. This conclusion may be reached without reluctance in this particular case, because the interest paid out was more than made up by interest received by the assignee on demands which he recovered for the trust estate after protracted litigation. In other words, could all the assets have been gathered in and applied to the liabilities on the day of the assignment, Mr. Day would have been in no better position relative to the prior preferred creditors, and would have received nothing in virtue of his preference.

The precise question here presented is, as far as I have been able to find, res nova both in this and in other states, and neither counsel have been able to furnish me with any authority directly on the point. There are, however, certain decisions in somewhat analogous cases. In Re Duncan, 10 Daly, 95, the assignee was directed to "pay and distribute the residue of the proceeds to and among the creditors of the firm, and to and among the creditors of the respective individuals constituting the firm, according to law in such case made and provided, so that each of said classes of creditors, to wit, the creditors of the said firm, and the creditors of the individual members thereof, shall receive, as such classes and respectively, from that part of such proceeds of all and singular the assigned premises in which, by law, they are respectively, as classes and individuals, entitled to share, their due and ratable proportion according to law." The court allowed to the individual creditors interest upon their claims up to the date of distribution before the surplus of the individual assets was turned over for the benefit of the copartnership creditors. The decision in that case seems to have been made upon an interpretation of the terms of the assignment as well as upon equitable grounds. In Bryant v. Russell, 23 Pick. 508, 533, 534, under an assignment considerably different in its facts from the present, the court said: "The creditors are entitled to interest on their respective debts, to be computed from the times when their respective notes became due and began to draw interest." In Scott v. Morris, 9 Serg. & R. 123, the directions in the deed of assignment were to pay to the creditors of the first class (to which the plaintiffs belonged) the amount of their respective demands in full. The court said: "The word 'demand' is very comprehensive. It includes everything which the creditors would have been entitled to recover by suit; and there is no doubt that interest might have been recovered as well as principal." Later on the judge observes: "Now, surely, it could not have been intended that the creditors should lose their interest, and the debtor put the money in his pocket,"—which shows that the question was not between preferred and unpreferred classes of creditors, as it is in this case. But his definition of "demand" applies none the less exactly to the word "indebted-

ness," which we have, because the two words are corelated,—signify the same thing as to amount,—the difference being that one is used from the standpoint of the creditor and the other from that of the debtor. I therefore think that the motion for a resettlement of the account should be denied, and the report of the referee confirmed, with $10 costs of motion. Ordered accordingly.