HATCH, J.
This action is in the nature of a creditors’ bill, filed by three judgment creditors of George Schwarz and others, composing a firm doing business under the name of the Brooklyn *25 Carriage & Harness Company, and seeks, as a result, to set aside the general assignment executed by the judgment debtors on October 22, 1894, to the defendant Mayer for the benefit of creditors, and also to set aside a conveyance of real estate executed by the defendant George Schwarz to his wife Barbara, on October 19, 1894. Both of these instruments are attacked as being fraudulent and void, in that they were executed for the purpose of hindering, delaying, and defrauding the creditors of the said firm, and of the individual members thereof. The assignment was of firm property, and was executed by the members thereof as partners. It did not, on its face, purport to assign individual property, and no provision was made therein for the payment of individual debts. The trial court found that the evidence was not sufficient to justify a finding of fraud in the assignment, and as to it judgment was rendered in favor of the assignee, dismissing the complaint upon the merits. As to the conveyance the court held that it could only be attacked by the assignee. The court declined to pass upon the merits in this respect, and simply dismissed the complaint, thus leaving the matter, if it was deemed advisable, open to an attack by the assignee in an action for that purpose. It is now insisted by appellant that the court erred in in both conclusions.
The first claim is that fraud in the assignment is apparent upon the undisputed facts, and consists in this : That the defendant George Schwarz did not deliver to the assignee, but retained possession of, six promissory notes, amounting, in the aggregate, to $3,550, which he held against the firm for money loaned to it; that he withheld $200 in cash, which he gave to his wife, saying to her, at the time, that it was all he had, and that he wished her to use it for the support of the family; also, that each of the partners, on the Saturday night before the execution of the assignment, drew $15 from the firm assets for their individual use. It is undoubtedly true that it is not necessarily essential, in order to-invalidate an assignment for fraud, that fraud in the assigneeshould be established. It is sufficient if fraud exist on the part of the assignors. We are, however, unable to see that fraud is necessarily to be deduced from the acts complained of, or that the' court was required to infer its existence from these facts. The retention of the notes in no wise prejudiced the assignee in carryout the purposes of the trust, nor did it deprive the creditors of the firm of any property applicable to the payment of their debts. We know of no rule of law which would prevent Schwarz from proving them as a claim against the assigned estate. What his position would be in respect to the other creditors in such event is not important now to consider. It certainly does not appear that he retained possession of the notes with any fraudulent design to defeat the purposes of the trust, and we are unable to see how anyone was prejudiced thereby. The retention of money by an assignor, in" contemplation of an assignment, may or may not constitute fraud. It is dependent, to a large extent,, upon the particular circumstances attending the case, in conse *26 quence of which each case must, in a large measure, and within certain limits, be determined upon its particular facts, having regard to the intent of the assignor, and the substantial character of the amount retained.
In Coursey v. Morton, 132 N. Y. 566; 43 St. Rep. 673, after the assignment had been executed, the assignor withdrew from tire bank $963.50, and delivered the same to his wife, who secreted it for about eight months, and it was only discovered upon a proceeding instituted for that purpose. The assignment in that case was confessedly made for the purpose of gaining time to compromise with creditors, and the sum secreted constituted, in a large measure, the available assets of the estate. The assignor was conscious at all times that he had no right to withhold the money, and that it belonged to his creditors. The court held that these acts constituted fraud, which invalidated the assignment. In Rothschild v. Salomon, 52 Hun, 486; 24 St. Rep. 205, the sum drawn out for household expenses was $4,042. Of this sum $2,300 was delivered to the wife of one of the assignors, and was falsely charged in the books as payment of a loan. No money was ever loaned by her, and in fact nothing was due. The court held this money was abstracted in anticipation of and in preparation for an assignment, in consequence of which the whole transaction was vitiated. The other cases cited by appellant in support of this contention add nothing to the strength of those already noted. We do not think they are controlling upon the proof now before us. The facts of this correspond quite closely to those' appearing in Vietor v. Nichols, 13 St. Rep. 461. There the partners drew an amount in excess of the sum drawn, here, and the whole amount drawn, so far as the report of the case shows, about equaled the sum drawn here by George Schwarz of his individual money and by the members of the firm. The court held that this withdrawal did not necessarily impeach the assignment, as the law"authorized a retention of a sum sufficient to meet family wants for a period of sixty days. This holding was affirmed on appeal. 114 N. Y. 617. We think that this auhority is abundant in support of the acts of the partners in drawing the small sum which each did from the partnership assets, and that fraud should not be inferred therefrom.
As to the withdrawal from the bank by Schwarz of his individual money, treating it as property which should necessarily have been assigned, we do not think it works out a fraudulent intent. It appears that of that sum nearly $100 was expended by him in the discharge of personal debts, and $200 was given to his wife for household expenses. It nowhere appears that this sum was excessive in amount for that purpose, and the case last cited recognized that nearly this amount was not the withdrawal of-so substantial a sum as to characterize the.act per se fraudulent. We recognize the rule that an act standing alone is not the criterion, but that all the acts which lead up to and culminate in the assignment are to be considered together, in order to determine whether a fraudulent scheme existed which, was consummated by all that was done. But here the *27 appellant selects the specified acts, and asks the court to find, for them, that they conclusively establish the fraudulent scheme. The court below felt constrained to hold that these acts were not sufficient for that purpose, and we are not satisfied, by the argument of the learned counsel for the appellant, that any error was committed therein. The record does not disclose that any act of George Swarz respecting the disposition of his individual property was known to or participated in by his co-partners. If fraudulent design upon his part existed, both the assignee and the co-partners were evidently innocent of any knowledge or participation therein. And, further, there is no evidence that George Swarz did any act or intended any act which interfered, or was calculated to interefere, with the entire disposition of the firm’s property, and this was all that the assignment purported to convey. We are, therefore led to the conclusion that the judgment finding no fraud in this assignment was correct, and that the dismissal of the complaint upon the merits must be upheld.
Respecting the other question, the conclusion of the court is not so easily supported. We agree with the learned court in its contusion that a case was presented upon which the court might found a judgment setting aside the conveyance by George Swarz to his wife as being in fraud of creditors. The conclusion that this could only be done through the intervention of the assignee is not so certain. The court based its determination in this regard upon the case of Loos v. Wilkinson, 110 N. Y. 195; 18 St. Rep. 110, where distinction is recognized between fraud upon the assignment and frand in the assignment. As to the former, the remedy is through the assignee; as to the latter, the remedy is against the assignment. We have already concluded that there is no fraud in this assignment. Must we conclude, therefore, that the remedy, if any, is in the assignee? It is to be noticed that, in the Loos Case, the assignment was made by a partnership, and purported to convey all their property, and the deed which was there attacked was also made by the partners, and was a conveyance of firm property. It is therefore plain that this property belonged in the assignment, and its exception therefrom was a fraudulent act. In all the cases that have fallen under our observation, where this principle has been invoked, this assignment itself purported to convey, and did convey and vest, the legal title to the assigned property in the assignee. The present assignment did not purport to convey the individual property of George Swarz. It was limited exclusively to the property owned by the firm. In Wheel Co. v. Fielding, 101 N. Y. 504, there was a general assignment by the firm; also a separate conveyance of individual property by one member of the firm to the assignee for the benefit of firm creditors,. and two conveyances by the same member of separate pieces of property to his son for the benefit of individual creditors. And the court held that the general assignment act did not embrace conveyances of specific property, nor include a transfer of individual property for the benefit of the creditors of the assignor. And it further held that the grantor in that case had a right to retain his individual property, and that it *28 did not pass by the general assignment of the firm. A court would find some evidence to sustain a finding that there existed a. bona fide debt of some amount owing by George Swarz to his wife. This debt, if it existed, he had a right to pay out of his indidividual property, to the exclusion of firm creditors. This claim is that he fraudulently transferred more property than was necessary for that purpose. This may be, but that does not affect the question here. Either the title to his individual property passed to the assigne, or it did not pass. If he could retain it to discharge individual debts, and he did retain it for that purpose, then theassignee got no title to it, and, as this, it seems, was what he did, I am unable to see how the assignment, under such circumstances, can be interposed as an obstacle to a creditor in pursuit of it. Actions are maintained by trustees by virtue of the provisions of the-statute, and are maintained upon the theory that the title to the property, if not in the grantee, is in the assignee. But this is only so when the assignment purports to convey such property, or by its terms such property would be embraced, or ought to have been embraced, and does not apply where by the terms of the instrument the assignee gets no title.
Could the assignee have maintained an action to set aside this conveyance? This necessitates a consideration of two propositions:. (1) That the conveyance should have been made with intent to hinder, delay, or defraud creditors, etc. 4 Rev. St (8th Ed.) p. 2594. (2) That the assignee should be the trustee of the creditors so defrauded, and that property so fraudulently transferred, etc., should be. “held by or of right belonging to such trustee or estate.” The property must be “so held in trust,” or must belong to the trust estate as of right and in law. The assignee and the creditors he represents must be interested in the property so held in trust,” “or of right belonging to any such trustee or estate.”" In other words the individual property of the partners must be deemed, as matter of fact, to be a part of the assigned estate, although not actually embraced within the assignment as made and executed. If it be conceded that the partners are not required by statute, to assign their individual property with the partnership-property, the assignee can have no interest whatever in the individual property when not so assigned. If the assignee, by virtue of the instrument, acquired title or right to individual property," then a subsequent individual assignment of individual property would be void as against him. It comes, then, to the proposition that the individual property of partners of right belongs in a firm assignment, or the trustee acquires no title or interest therein,; and can maintain no action to reach it under the statute. That it" does not necessarily belong therein is decided in the Royer Wheel Company Case, supra, and others. McFarland v. Bate, 45 Kan. 1, 25 Pac. 238; Drucker v. Wellhouse, 82 Ga. 129; Ex parte Hopkins, 104 Ind. 157 Bradley v. Bischel, 81 Iowa, 80; Crook v. Rindskopt, 105 N. Y. 476; 8 St. Rep. 66; Klumpp v. Gardner, 114 N. Y. 153; 22 St. Rep. 672; Burrill, Assign. (6th Ed.) p. 67.
It is claimed that this action cannot be maitained for the reason that, if the conveyance be set aside, it will not enable plaintiff’s *29 ¡judgment to attach upon the property. But this assumes that the title is in the assignee. It was held in the Royer Wheel Company Case that the judgment, although against, the firm, nevertheless attached as a lien to the real estate of the individual member of the firm. My research has not enabled me to find a case where the precise point now presented has been considered. But it seems to me that, if it be lawful for the individual member to retain from the firm’s assignment his individual property, and that title to such property does not vest in the assignee, then, upon principle, it must follow that a creditor whose judgment is a lien can pursue that property. That seems to be the case here.
If these views are correct, it follows that the judgment appealed from, so far as it dismissed the complaint upon the merits should be affirmed, with costs to the assignee; and so far as it dismissed the complaint, without passing upon the merits, it should be reversed, and new trial ordered, with costs to abide the event.
All concur